SAMPSON DISTRIBUTING COMPANY, a Corporation, v. ROY H. CHERRY, State Inspector of Oils, Appellant.—143 S. W. (2d) 307.

Division Two, September 27, 1940.

*Roy McKittrick,* Attorney General, and *Lawrence L. Bradley,* Assistant Attorney General, for appellant.

*Edward A. Farrenbach* for respondent.

WESTHUES, C.— Respondent, Sampson Distributing Company, filed this, a mandamus suit, against appellant Cherry, the State Inspector of Oils and Motor Fuels, to compel appellant to issue a license to respondent company as a distributor of motor fuels. The trial court issued the writ as prayed for, from which judgment an appeal was taken. A state officer being sued vests this court with appellate jurisdiction.

Appellant insists that the trial court erred in entering a decree compelling him to issue respondent a license, because the evidence showed that the respondent corporation was organized by J. O. Sampson for the purpose of evading the provisions of Section 7820, R. S. Mo. 1929, Mo. Stat. Ann., page 5258, which provides in part:

"After a license shall have been revoked, no new license shall be

issued to such licensee unless such person, distributor or dealer shall pay all taxes, penalties and interest in arrears or due the state.''

Appellant had revoked the license of the Power Oil Company for failure to pay taxes due the State. J. O. Sampson owned all but one share of the stock in the Power Oil Company. The taxes due the State, for which the license was revoked, had not been paid at the time of the trial. The State contends that the various corporations formed by Sampson were all controlled by him and that the corporate entities should be disregarded. A short history of these corporations will be necessary to understand the position of appellant and also that of respondent. In the year 1919, the Trico Oil Company engaged in business as a partnership and was incorporated in the year 1926. It did a business of about $800,000 per year. The financial depression of 1929 came on and in the year 1930 the company was adjudged an involuntary bankrupt. Sampson owned about one-half of the stock at that time. The corporation owed the State an amount of taxes for which a preferred claim was filed by the State, and the taxes were paid in full, including penalties and interest. Sampson had been the principal figure in the Trico Company. After it went ''on the rocks'' Sampson organized the Power Oil Company which was incorporated in January, 1931. This company was located in the 600 block on Vandeventer Avenue. A Mr. Klump furnished the cash, $5,000, and one-half of the stock was issued to him. Sampson executed a note to Klump and pledged to him the shares of stock as security. Later a disagreement arose between Sampson and Klump and Sampson purchased Klump's interest. To obtain the cash for this purchase Sampson pledged all of the stock as security. Financial difficulties arose and the company gave a chattel mortgage to the Socony-Vacuum Oil Company, Incorporated, to secure an indebtedness of about $6,000. The Power Oil Company became delinquent in the payment of taxes due the State. The Oil Inspection Department sent notices to the company from month to month to show cause why its license should not be revoked. The company was making payments, and the department gave further time without any hearing pursuant to the notices given. A notice was given the company to show cause for failure to pay taxes due for the month of May, 1936. The company, on June 25, 1936, paid $800 to the State; on June 27, $700; the following month, July 8, $500; and July 28, $625.26. There still remained unpaid $204.95 for the month of May. The above payments were not all made for taxes for the month of May. Penalties were added to the delinquent taxes, which at times were as much as twenty-five per cent of the amount of the tax. On August 14, 1936, the company's license was revoked. Thereafter the Socony-Vacuum Oil Company foreclosed its chattel mortgage and thus ended the Power Oil Company. It owed the State a balance of about $3,346.96.

In this amount was included a large sum representing penalties and interest.

The Sampson Oil Company came to life April 24, 1934, and established a place of business in the 6100 block on Olive Street road. Sampson was the owner of all the stock except qualifying shares. In June, 1936, which was about the same time that the Power Oil Company was having financial difficulties, Sampson in a property settlement transferred all of his stock in the Sampson Oil Company to his wife. Mrs. Sampson had filed for and secured a divorce. The Sampson Oil Company was still doing business at the time of the trial of this case, but Sampson had no interest therein. The State claimed that the Sampson Oil Company owed the State taxes for the months of July and August, 1936. A suit was pending, at the time of the trial, to collect the taxes alleged to be due. Since Sampson had no interest in that company in the months of July and August, 1936, and has had no interest therein since that time he cannot be charged with the responsibility of the delinquent taxes, if any, of that company.

In August, 1934, the Atlas Oil Company was formed. The stock was issued as follows: Z. A. Pennington, forty-seven shares; S. A. Thomas, two shares; C. H. Stoll, one share. Later the bulk of the stock was transferred to Sampson. The explanation was made that Sampson, at the time of the incorporation of that company, was having trouble with a labor union and therefore the stock was not issued to him. The Oil Inspection Department had knowledge of all these facts and it knew that Sampson was in fact the owner of most of the stock in that corporation. This company engaged in business at 700 South Vandeventer Avenue. Sampson, as an individual, had leased this property and desired to transfer the lease to the corporation, but the owner of the property refused to consent to the assignment. The owner also had the right under the lease to sell the property at any time by paying the lessee a certain stipulated sum. The property was sold, the lease canceled and on December 31, 1936, the Atlas Oil Company ceased to do business and forfeited its charter. The State claimed that this company owed taxes in the sum of $480 plus penalties and interest. The Atlas Company paid the State $150 in October, 1936, and a like sum on November 14, 1936. The department, however, credited these payments to the Power Oil Company's account, whose license had been revoked the previous August. The Atlas Company made an offer to pay $180 as the balance due, but the State department refused to accept that amount in full payment. When the Atlas Company ceased to do business Sampson owned only twenty-four of the fifty shares in the corporation. At the time of the trial the records of the State department showed that the Atlas Company still owed the $480 plus penalties and interest.

After the Atlas Company ceased to do business Sampson engaged

in business as a dealer under the name of Keystone Oil Company. The State department refused to issue him a license. The Keystone Oil Company of New York, a corporation, demanded that Sampson discontinue the use of the name of Keystone. Sampson complied with the demand. Respondent corporation was then incorporated on September 3, 1937. James O. Sampson, who has been referred to above, was issued forty-four shares of stock; a brother, John C. Sampson, five shares and Z. A. Pennington, one share. This corporation applied to appellant for a license and was refused. This suit followed.

The trial court issued the writ of mandamus prayed for, and since its incorporation the company has been doing business, filing reports required by the statute and paying its taxes. We are of the opinion the evidence justified a finding that the Power Oil Company was the only company in which Sampson was interested which was delinquent in the payment of taxes. The trial court evidently found that this delinquency was not intentional but was due to financial difficulties. The company was in arrears with its payment of taxes and therefore heavily penalized, and on some occasions paid as high as twenty-five per cent in interest and penalties. Then, when its license was revoked, a creditor foreclosed a mortgage, which caused, according to undisputed evidence, a sacrifice of the property and its business. We are not censoring the Oil Inspection Department, because it may have had its patience tried by the chronic delinquency of the Power Oil Company in the payment of its taxes. The State department insists that the corporate entities of the Power Oil Company and respondent corporation should be disregarded and both treated as though Sampson, as an individual, were the owner of the business. The trial court found that the Sampson Distributing Company was not formed for the purpose of evading the law which prohibited the issuance of a license to anyone who was delinquent in payment of taxes. It is urged that the finding of the trial court was not supported by any evidence. It is also insisted that the only inference justified by the evidence is, that the corporations were in fact Sampson. In the State's brief it is said:

"18 C. J. S., p. 378, section 6, says the corporate entity will be disregarded when 'controlled and influenced by one or a few persons' and is used 'as a subterfuge to defeat public convenience, to justify wrong, or to perpetrate fraud.' And 'a growing tendency is therefore exhibited in the courts to look beyond the corporate form to the purpose of it, and to the officers who are identified with that purpose.'"

We have no fault to find with that statement. Many cases are cited in the State's brief in support thereof. They need not be reviewed. The crucial question in this case is whether the evidence justified the finding of facts made by the trial court. In 18 C. J. S. 378, sec. 6, referred to in the State's brief, it is also stated:

". . . a corporation ordinarily is to be regarded as a separate entity, distinct from the members who compose it, and such entity will be disregarded only when there are controlling reasons. It must appear not only that the corporation is controlled and influenced by one or a few persons, but, in addition, it is necessary to demonstrate that the corporate cloak is utilized as a subterfuge to defeat public convenience, to justify wrong, or to perpetrate fraud. Furthermore, the corporate entity will not be disregarded where to do so would promote an injustice or contravene public policy."

We are of the opinion that the Power Oil Company, while in financial difficulties during the months preceding the revoking of its license, was making desperate efforts to pay its taxes. That is evidenced by payments of about $2600 or more during the months of June and July. Its creditors were also demanding payment of their bills. While financial difficulty is not an excuse under the statute, yet, the above facts may be taken into consideration on the question of fraud. The trial court was in a better position to view the situation than is this court. We do not feel justified in disturbing its finding of facts. The rule on appeal from a judgment in a mandamus proceeding is thus stated in 38 C. J. 949, sec. 752:

"The discretion of the court below in granting or refusing the writ will not be reviewed where it appears to have been lawfully exercised and no abuse is shown."

That rule is supported by good authority. [State ex rel. Hyde v. Jackson County Medical Soc., 295 Mo. 144, 243 S. W. 341, l. c. 345 (6); State ex rel. Crow v. Boonville Bridge Co., 206 Mo. 74, l. c. 137, 103 S. W. 1052; State ex rel. Journal Printing Co. v. Dreyer, 167 S. W. 1123, l. c. 1127 (2); State ex rel. Haeussler v. German Mut. Life Ins. Co. of St. Louis, 152 S. W. 618, l. c. 620 (6, 7).] In the Hyde case, supra, this court quoted with approval the following from 26 Cyc. 507:

"On appeal or error in mandamus proceedings the appellate court cannot consider the weight of conflicting evidence, or review the discretion of the court below in granting or refusing the writ, where it appears to have been lawfully exercised and no abuse is shown."

Cases from other states are reviewed in that opinion.

The judgment is affirmed. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.