STATE ex rel. Vincent K. CAVALLARO,
Appellant,

v.

Mike GROOSE, Superintendent,
J.C.C.C., Respondent.

No. 77679.

Supreme Court of Missouri,
En Banc.

Oct. 24, 1995.

Douglas W. Hennon, Jefferson City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Stacy L. Anderson, Asst. Atty. Gen., Jefferson City, for respondent.

## PETITION FOR A WRIT OF MANDAMUS

BENTON, Judge.

In April 1994, the Board of Probation and Parole denied parole release to Petitioner Vincent K. Cavallaro. He seeks a writ of mandamus for a new hearing that uses as the governing law the parole statute in effect at the time he committed his first offense in 1968. *Mo. Const. art. V., § 4; Rule 84.23.* The alternative writ is quashed.

### I.

In 1969, Cavallaro received Missouri convictions for first and second-degree murder for two homicides committed after he escaped from a North Carolina prison, where he had been incarcerated for a prior murder. In 1981, Cavallaro again escaped, stole a van, and later received an additional sentence.

In April 1994, the Board denied Cavallaro parole, citing the seriousness of his offenses and his criminal history:

> Because you have been convicted of offenses in which you murdered two victims in two separate incidents, the Board believes that your release at this time would depreciate the seriousness of the offense committed and/or promote disrespect for the law. The Board also notes that due to your extensive criminal record, as indicated by your previous convictions, which have resulted in probation and a previous felony incarceration, from which you were on escape status at the time you committed the present offenses, the Board believes that there does not appear to be a reasonable probability at this time that you would live and remain at liberty without again violating the law.

At the time of Cavallaro's offenses in 1968 and 1981, § 549.261 RSMo 1959 governed parole. In 1982, the General Assembly repealed that statute, enacting § 217.690 RSMo Supp.1982. Claiming a liberty interest in parole based on the old statute, Cavallaro seeks a hearing governed by its provisions. He also asserts that the Board used the current statute to determine his parole eligibility, in violation of the *ex post facto* clauses of the United States and Missouri constitutions. *U.S. Const. art. 1, § 10, cl. 1; Mo. Const. art. 1, § 13.*

### II.

There is no constitutional or inherent right to early release from prison. *Greenholtz v. Inmates of Neb. Penal and Correctional Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668 (1979). However, a state's parole statute may create a protected liberty interest in parole. *Id.* at 12, 99 S.Ct. at 2106. Therefore, this Court must review the relevant statutes to determine under what circumstances a liberty interest is created.

### A.

Traditionally, a court makes this determination by evaluating whether the "unique structure and language" of a statute create a protectible entitlement. *Id.* This

evaluation must be made on a case-by-case basis. *Id.*

When Cavallaro committed his Missouri offenses, the parole statute read:

> When in its opinion there is reasonable probability that the prisoner can be released without detriment to the community or to himself, the board shall release or parole any person confined in any correctional institution administered by state authorities.

§ 549.261 RSMo 1959. In 1981, citing *Greenholtz*, the Eighth Circuit held that the mandatory word "shall" in this statute created a justifiable expectation of release, a "liberty interest," *if the statutory criteria are satisfied. Williams v. Missouri Bd. of Probation & Parole*, 661 F.2d 697, 698–699 (8th Cir.1981), *cert. denied*, 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 855 (1982) (emphasis added).

■ Following the decision in *Williams*, the legislature repealed § 549.261, substituting § 217.690:

> When in its opinion there is reasonable probability that an offender of a correctional facility can be released without detriment to the community or to himself, the board may in its discretion release or parole such person except as otherwise prohibited by law.

§ 217.690 RSMo 1994. There can be no liberty interest in parole under the new statute. *Ingrassia v. Purkett*, 985 F.2d 987, 988 (8th Cir.1993); *Maggard v. Wyrick*, 800 F.2d 195, 198 (8th Cir.1986), *cert. denied*, 479 U.S. 1068, 107 S.Ct. 958, 93 L.Ed.2d 1006 (1987); *Green v. Black*, 755 F.2d 687, 688 (8th Cir. 1985). The new statute creates no justifiable expectation of release, giving the Board "almost unlimited discretion" in whether to grant parole release. *Ingrassia*, 985 F.2d at 988.

### B.

This mandatory/discretionary method of determining state-created liberty interests has recently been criticized. *Sandin v. Conner*, — U.S. —, — – —, 115 S.Ct. 2293, 2298–99, 132 L.Ed.2d 418 (1995). The *Sandin* analysis focuses on the nature of the supposed entitlement, asking whether it is a right of "real substance" and if the inmate has suffered a "grievous loss." *See id.* at —, 115 S.Ct. at 2298. State-created liberty interests are "limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." — U.S. at —, 115 S.Ct. at 2300. The *Sandin* approach only confirms that the current parole statute, § 217.690 RSMo 1994, creates no liberty interest in parole.

### III.

Cavallaro does not claim that, prior to the new statute's enactment, he met the statutory requisites for release but was nevertheless refused parole. Rather, Cavallaro asserts a special kind of liberty interest: the continuing right to parole hearings governed by the old statute in effect at the time of his crimes. In effect, Cavallaro asserts a substantive due process right that the state cannot rescind. Unfortunately, he misunderstands the relation of state-created entitlements and substantive due process.

■ The substantive component of the Due Process Clause protects "fundamental" rights, that is, those "implicit in the concept of ordered liberty." *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937). Fundamental rights are "created only by the constitution." *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229, 106 S.Ct. 507, 515, 88 L.Ed.2d 523 (1985) (Powell, J., concurring). *Accord, McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. banc 1994), *cert. denied*, — U.S. —, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995). Substantive due process protects such rights against "certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986).

■ On the other hand, where the right exists only by state law, it is not protected by *substantive* due process and "may constitutionally be rescinded so long as the elements

of *procedural* due process are observed." *McKinney,* 20 F.3d at 1556 (emphasis added). As far as due process is concerned, "[t]he legislature that creates a statutory entitlement ... is not precluded from altering or terminating the entitlement by a later enactment." *Packett v. Stenberg,* 969 F.2d 721, 726 (8th Cir.1992). Accordingly, as regards due process, any continuing liberty interest in the use of the old parole statute was extinguished by enactment of the new law.[1]

If Cavallaro has any entitlement to be considered for parole under the statute in effect at the time of his crimes, it arises not from any liberty interest under Fourteenth Amendment concepts of due process, but from his right to be free from *ex post facto* laws.

## IV.

Here, the proper inquiry is whether conducting Cavallaro's parole hearing under the current statute violated the prohibition against *ex post facto* laws. *U.S. Const. art. I, § 10, cl. 1; Mo. Const. art. I, cl. 13.*

■ The *ex post facto* clause is aimed at laws that are retroactive and that either alter the definition of crimes or increase the punishment for criminal acts already committed. *California Dept. of Corrections v. Morales,* — U.S. —, — – —, 115 S.Ct. 1597, 1601–02, 131 L.Ed.2d 588 (1995); *Collins v. Youngblood,* 497 U.S. 37, 43, 110 S.Ct. 2715, 2719, 111 L.Ed.2d 30 (1990). Missouri's current parole law is retroactive to the extent that it alters the consequences attached to a crime for which a prisoner has already been sentenced. *See Burnside,* 760 F.2d at 221. However, this does not end the inquiry. Cavallaro must also establish that the change in Missouri's parole law either alters the definition of his crime or increases his punishment. Since the new parole statute clearly does not re-define any crime, the only issue is whether it increases Cavallaro's punishment.

■ The Board denied Cavallaro parole release based on the "seriousness of the offense." This is a valid reason under either the old or new statute. *Cooper v. Bd. of Probation & Parole,* 866 S.W.2d 135, 138 (Mo. banc 1993); *Burnside,* 760 F.2d at 221; *Maggard,* 800 F.2d at 197. Therefore, the Board's use of the new statute does not increase Cavallaro's punishment beyond that allowed by the old law, and thus does not violate the *ex post facto* clause.

■ Cavallaro specifically argues that allowing the current, five-member board to determine his parole eligibility—rather than a three-member board as existed in 1968—constitutes an *ex post facto* violation. *Compare* § 217.665.1 RSMo 1994 *with* § 549.205.1 RSMo 1959. He asserts "disadvantage" because he must convince three people rather than two, in order to gain parole. However, mere "disadvantage" to an offender is not the standard for judging the *ex post facto* effect of a law. *Morales,* — U.S. at — n. 3, 115 S.Ct. at 1602 n. 3. Rather, to trigger the *ex post facto* clause in this case, the change in law must "increase[ ] the penalty by which a crime is punishable." *Id.* The United States Supreme Court specifically cautioned the judiciary against "micromanagement of an endless array of legislative adjustments to parole and sentencing procedures, including such innocuous adjustments as changes to the membership of the Board of Prison Terms ... [and] reductions in the duration of the parole hearing." *Morales,* — U.S. at —, 115 S.Ct. at 1602–03. Although such changes might create "some speculative and attenuated risk" of affecting an inmate's term of imprisonment, this alone does not render such changes unconstitutional. *See id.* at — 115 S.Ct. at 1603. Cavallaro has not met his burden to show that enlargement of the board increased his punishment. *See id.* at — n. 6, 115 S.Ct. at 1603 n. 6. Thus, conducting Cavallaro's pa-

---

1. Indeed, in the thirteen-year life of Missouri's current parole statute, the Eighth Circuit has consistently applied it to prisoners who committed their offenses before the new statute's enactment. *See Ingrassia,* 985 F.2d at 988; *Maggard,* 800 F.2d at 196, 198; *Burnside v. White,* 760 F.2d 217, 218–20 (8th Cir.1985), *cert. denied* 474 U.S. 1022, 106 S.Ct. 576, 88 L.Ed.2d 559 (1985); *Green,* 755 F.2d at 688. *But see Parker v. Corrothers,* 750 F.2d 653, 661 (8th Cir.1984) (Arkansas case invoking not due process but rather *ex post facto* grounds *citing Weaver v. Graham,* 450 U.S. 24, 28–29, 101 S.Ct. 960, 963–64, 67 L.Ed.2d 17 (1981)).

role hearing under the current statute did not violate the ex post facto prohibitions.

### V.

Cavallaro relies on *State ex rel. Shields v. Purkett*, 878 S.W.2d 42 (Mo. banc 1994), decided before the Supreme Court's recent *Sandin* and *Morales* opinions. Cavallaro ignores *Shields* statement that a "liberty interest in parole" can arise only after the statutory and regulatory conditions in the old law have been satisfied. *Id.* at 46. *Shields* does not stand for the proposition, nor should it be interpreted, that a parole hearing must always be conducted under the law in effect at the time of the offense.

The alternative writ of mandamus is quashed.

HOLSTEIN, C.J., PRICE, LIMBAUGH, ROBERTSON and COVINGTON, JJ., and WELSH, Special Judge, concur.