**John WILLIAMS, Appellant,**

v.

**James A. GAMMON, et al., Respondent.**

**No. WD 50770.**

Missouri Court of Appeals,
Western District.

Nov. 14, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 26, 1995.

John Williams, Appellant Pro Se.

Jeremiah W. (Jay) Nixon, Attorney General, Cassandra K. Dolgin, Assistant Attorney General, Jefferson City, for respondent.

Before LAURA DENVIR STITH, P.J., and LOWENSTEIN and HANNA, JJ.

LAURA DENVIR STITH, Presiding Judge.

Following the denial of parole by the Missouri Board of Probation and Parole (MBPP), John Williams filed a Petition for Writ of Mandamus, alleging that MBPP had applied those statutes and regulations in effect at the time of the parole hearing rather than those statutes and regulations in effect at the time Mr. Williams committed the offenses. He does not allege that the Board would have been required to find he met the parole standards in effect at the time of the offense, but only that he had a right to have those standards applied in determining whether he was entitled to parole.

The trial court dismissed Mr. Williams' Petition after determining that he was not entitled to the relief requested. Mr. Williams appeals on the grounds that he established a clear and unequivocal right to the relief sought and that Respondents breached a present and unconditional duty owed him. We affirm the denial of mandamus based on the Missouri Supreme Court's recent holding in *State ex rel. Cavallaro v. Groose*, 908 S.W.2d 133 (Mo. banc 1995), that a prisoner has no liberty interest in the application of the statutory and regulatory conditions for parole in effect at the time of the offense, rather than those currently in effect, unless he can show that he would have been entitled to parole under the older standard.

I. *FACTUAL AND PROCEDURAL BACKGROUND*

In 1979, Appellant John Williams was found guilty by a jury of forcible rape, sodomy, kidnapping and stealing a motor vehicle. He was sentenced to two life terms and two terms of ten years imprisonment, all terms to be served consecutively. Pursuant

to a second judgment of conviction in an unrelated case, Mr. Williams was also sentenced to terms of imprisonment of two years and ten years for stealing over $50 (auto) and rape (statutory), respectively. These sentences were ordered to run concurrent with those earlier imposed upon Mr. Williams.

On September 14, 1994, the Missouri Board of Probation and Parole (MBPP) denied Mr. Williams parole, stating:

Having been found guilty of two separate incidents where victims were taken to vacant houses and were then sexually assaulted, *the Board believes that your release at this time would depreciate the seriousness of the offenses committed and/or promote disrespect for the law.* The Board further notes that you have a history of criminal involvement, as evidenced by your previous convictions. Therefore, the Board has in its discretion determined to schedule you for another personal hearing in September, 1996.

(emphasis added).

Following the denial of parole, Mr. Williams filed a Petition for Writ of Mandamus, alleging that MBPP had applied those statutes and regulations governing parole which were in effect *at the time of the parole hearing* rather than those statutes and regulations in effect *at the time Mr. Williams committed the offenses.* Mr. Williams claimed that MBPP had deprived him of his liberty interest in being considered for parole under the provisions of the existing law at the time of the offenses for which he was convicted, relying upon *State ex rel. Shields v. Purkett,* 878 S.W.2d 42 (Mo. banc 1994). Mr. Williams sought a writ to compel MBPP to hold another hearing and apply the statutes and regulations in effect at the time the offenses were committed.

The trial court ordered that summons be issued to the both MBPP and James Gammon, Superintendent of the correctional facility where Mr. Williams was being held (collectively Respondents). The Sheriff served these summonses upon a representative of MBPP and upon Mr. Gammon.

Respondents filed a Motion to Dismiss Mr. Williams' Petition for failure to state a claim upon which relief could be granted. In this motion, Respondents alleged that the reasons provided by MBPP for deciding not to place Mr. Williams on parole were valid under the former parole statue and applicable regulations. In addition, Respondents asserted that Mr. Williams failed to establish that MBPP applied the wrong regulations as required by *Shields,* and presented an affidavit which they claimed raised an inference that they had used the correct standard.

The trial court, after reviewing the pleadings, concluded that Mr. Williams was not entitled to the relief requested and dismissed the Petition. Mr. Williams appeals this dismissal, claiming that he has established his clear and unequivocal right to the relief sought and that Respondents have breached a present and unconditional duty owed to him.

## II. JURISDICTION AND STANDARD OF REVIEW

### A. Jurisdiction.

The first issue which we must resolve is whether we have jurisdiction of this appeal. Petitioner suggests, without citation, that this Court has jurisdiction to hear an appeal of a denial of mandamus. Respondent discusses numerous cases addressing our jurisdiction to hear an appeal of a denial of an alternative writ of mandamus and notes that the opinions in this area appear to be inconsistent. Respondent urges that the cases holding that we do have jurisdiction are better reasoned and asks us to find that we do have jurisdiction and to affirm dismissal.

The general rule is that, if a trial court issues an alternative or provisional writ of mandamus, then the issues are joined and the court's ultimate decision either granting a permanent writ of mandamus, or quashing the alternative writ, is appealable as a final order. *Hunter v. Madden,* 565 S.W.2d 456 (Mo.App.1978). Where, however, a court refuses to issue an alternative writ in the first instance, then no appealable order exists, and Petitioner's remedy is simply to file for a writ in the next higher court. *Pessin v. State Tax Comm'n,* 875 S.W.2d 143 (Mo.App. 1994).

In this case, the trial court did not immediately rule on the Petition. Rather, it directed that a summons issue to each of the Respondents. In response, Respondents filed a Motion to Dismiss which addressed the merits of the claim that MBPP had used the incorrect regulation in denying Petitioner parole. Respondents attached to the Motion an affidavit, based on the personal knowledge of the affiant, which stated that MBPP would have applied the regulations more beneficial to Mr. Williams in determining his eligibility for parole. Following review of the Petition and the Motion to Dismiss, the trial court entered an order dismissing the Petition for Writ of Mandamus.

The dismissal on its face is ambiguous as to whether it constitutes a refusal to issue an alternative writ, or whether it is intended to constitute a substantive determination on the merits that Petitioner is not entitled to relief. Both Petitioner and MBPP have interpreted it in the latter manner.

A similar situation was addressed in *State ex rel. Schaefer v. Cleveland,* 847 S.W.2d 867 (Mo.App.1992). There, as here, before the trial court could issue or refuse to issue an alternative writ of mandamus, respondents filed a motion to dismiss which addressed the merits of the claim. In addressing the jurisdictional issue, *Schaefer* held:

> Where, however, the respondent appears without service of an alternative writ, and makes his return, the petition stands as and for the alternative writ itself for the purposes of the case and the return. *Where the court below dismisses the petition following answer or motion directed to the merits of the controversy and in so doing determines a question of fact or law the order is final and appealable.* Here respondents answered the petition for alternative writ and filed motions to dismiss directed to the sufficiency of the allegations to state a cause of action. The trial court ruled on the sufficiency of the allegations, an issue of law. The order granting the motion to dismiss is final and appealable. We have jurisdiction.

*Id.* at 870 (emphasis added) (citations omitted).

Here, Respondents not only filed a Motion to Dismiss, but further filed an affidavit addressing the merits. This in effect turned the motion into one for summary judgment. Rule 74.04; *Gardner v. City of Cape Girardeau,* 880 S.W.2d 652 (Mo.App.1994). Following *Shaefer,* we consider the order of the trial court to have been a final and appealable order on the merits and find that we have jurisdiction to hear the appeal.

### B. Standard of Review.

A writ of mandamus is appropriate only when the respondent has a clear duty to perform a certain act. *State ex rel. City of Crestwood v. Lohman,* 895 S.W.2d 22, 27 (Mo.App.1994). Furthermore, the purpose of mandamus is to execute and not to adjudicate; it coerces performance of a duty already defined by law. *Id.* On appeal from dismissal of a writ of mandamus, the concern of this Court is whether the trial court reached the correct result. *State ex rel. Patterson v. Tucker,* 519 S.W.2d 22 (Mo.App. 1975). The discretion of the trial court in granting or refusing a writ of mandamus will not be reversed where it appears to have been lawfully exercised and no abuse is shown. *Sampson Distributing Co. v. Cherry,* 346 Mo. 885, 143 S.W.2d 307 (1940).

### III. THE COURT DID NOT ERR IN DISMISSING MR. WILLIAMS' PETITION

The substantive issue we must resolve is whether the trial court erred in dismissing Mr. Williams' Petition in mandamus on the merits. The determination of this issue is governed by the principles set out in *State ex rel. Shields v. Purkett,* 878 S.W.2d 42 (Mo. banc 1994), as supplemented in the Missouri Supreme Court's recent decision in *State ex rel. Cavallaro v. Groose,* 908 S.W.2d 133.

In *Shields,* as here, the prisoner claimed a liberty interest in having his right to parole determined at a hearing "based on the statute and regulations in effect at the time of his offenses," citing *Williams v. Missouri Bd. of Probation & Parole,* 661 F.2d 697 (8th Cir.1981), *cert. denied,* 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 855 (1982).

*Shields* assumed, without deciding, that a prisoner does have such a liberty interest in the application of the statute and regulations in effect at the time of his offenses and went on to address who has the burden of proving whether the correct statute and regulations were used and in what circumstances that burden is shifted. *Shields,* 878 S.W.2d at 44. As *Shields* noted, a petitioner for habeas corpus relief normally has the burden of proving entitlement to relief. Similarly, a petitioner for mandamus normally must show a clear and established right to the duty he seeks to enforce by mandamus. *Gould v. Missouri State Bd. of Registration for Healing Arts,* 841 S.W.2d 288 (Mo.App.1992).

*Shields* held, however, that "where there is a deficiency in the record, and where the evidence lies in the hands of the state, this burden shifts to the state." *Shields,* 878 S.W.2d at 45. *Shields* then noted that, while MBPP's decision did not recite which statute or regulations were being applied, it did exactly quote a portion of the current parole regulations, rather than the language of the regulations in effect at the time of the offense.

More specifically, the order denying parole in *Shields* stated "the Board believes that your release at this time would depreciate the seriousness of the offense committed *and/or promote disrespect for the law."* *Shields,* 878 S.W.2d at 45–46 (emphasis added). This tracked the language of the regulations then in effect, which stated in relevant part that MBPP may give as a reason for denying parole that "[r]elease at this time would depreciate the seriousness of the offense committed *or promote disrespect for the law."* *Shields,* 878 S.W.2d at 45 (emphasis added).

By contrast, the regulations in effect at the time of the offense in *Shields* permitted MBPP to give as a reason for release that "[r]elease at this time would depreciate the seriousness of the offense committed *and would thus be incompatible with the welfare of society."* *Shields,* 878 S.W.2d at 46 (emphasis added). The latter language was *not* used in the order denying parole. *Shields* held that a rebuttable inference arose from the use of the language of the current regulations that MBPP had improperly used the current regulations in denying parole. This inference shifted "the burden to MBPP to prove it used the old statute and regulations. It has not met this burden." *Shields,* 878 S.W.2d at 46.

In the instant case, as in *Shields,* the order denying parole to Mr. Williams tracked the language of the current regulations, rather than the language of the regulations in effect at the time of the offense. In fact, the language used in the order in this case and in the order in *Shields* is identical. Pursuant to *Shields,* this raises an inference that MBPP had used the current standard in denying parole to Mr. Williams rather than the standard in effect at the time of the offense.

As in *Shields,* Respondents in this case have failed to rebut this inference with other evidence showing that the standards in effect at the time of the offense were in fact used. In response to the Petition and in support of their Motion to Dismiss, Respondents simply filed copies of the regulations in effect at the time of the offense and an affidavit of a member of MBPP. The affidavit does not state whether MBPP applied the regulations in effect at the time of the offense or the current regulations, however, but simply says:

2. As a member of the Missouri Board of Probation and Parole I am familiar with past and present parole statutes and regulations.

3. In particular, I am familiar with the Board's decision-making process with John Williams, No. 36764, for the years 1985, 1988, 1990, 1992, and 1994.

4. *Whenever there is a difference* between the statute or regulation in effect at the time the prisoner commits his offense and the statute or regulation in effect at the time of parole consideration, *the Board uses the statutes and/or regulations that benefit the prisoner's application for parole.*

(emphasis added). In other words, the affiant simply testified that MBPP would have used the most beneficial regulations as a matter of policy. He affies no personal

knowledge as to what regulations were in fact used here.

While MBPP now suggests the Board would have found the older regulations more beneficial, this conclusion is purely based on speculation. As a result, the affidavit was insufficient to overcome the inference that the incorrect standard was used in denying probation.

■ This does not end our inquiry, however. Since *Shields* was decided, and since the briefing in this case, the Missouri Supreme Court has handed down *Cavallaro.* *Cavallaro* addressed the issue left open in *Shields:* whether the failure to apply the parole standards in effect at the time of the offense violates a liberty or due process interest of the prisoner.

In *Cavallaro,* as here, the prisoner showed that the Board had applied the current parole regulations rather than those in effect at the time of his offense. Relying on *Shields,* he argued he was entitled to the application of the latter standards. *Cavallaro* held that *Shields* provided no assistance to a prisoner such as Cavallaro (and such as Mr. Williams), who could not show that he satisfied the statutory and regulatory conditions of the old parole standards or that the Board would have been required to grant him parole under them. *Cavallaro,* 908 S.W.2d at 137. It further clarified that "*Shields* does not stand for the proposition, nor should it be interpreted, that a parole hearing must always be conducted under the law in effect at the time of the offense." *Id.*

■ *Cavallaro* also clarified that a prisoner does not have a *substantive* due process right to the application of a particular state law, such as the law governing the right to parole. A prisoner's right to the application of such state-created rights (as opposed to fundamental federal constitutional rights) is instead entitled only to the protections of *procedural* due process. Procedural due process, however, does not preclude the legislature from changing the standards under which parole will be granted, so that "any continuing liberty interest in the use of the old parole statute was extinguished by enactment of the new law." *Id.,* 908 S.W.2d at 136.

In addition, *Cavallaro* held that the fact that the parole hearing in that case applied the current parole statute and regulations did not violate the prohibition against *ex post facto* laws because the regulations did not either alter the definition of crimes or increase the punishment for criminal acts already committed. More specifically, the Court noted that the reason given for denying parole included the seriousness of the offense, a factor which would provide a valid reason to deny parole under either the old or new regulations and statute.[1]

Similarly, here, the Board gave the seriousness of the offense as a reason for denying parole, a factor which is valid under the old or new statute. Mr. Williams has not alleged or shown that the Board would have been required to parole him had the old statute and regulations been applied. He has not shown violation of any liberty or due process interest. The decision of the trial court denying his Petition for Mandamus must therefore be affirmed.

All concur.

---

1. *Cavallaro* indicated that if a new parole regulation did increase the punishment for an offense, as by making release dependent on a factor which would not have provided a basis for deny-

ing release under the old statute, then the prohibition against *ex poste facto* laws might indeed be implicated. *Id.,* 908 S.W.2d at 136–37.