Charles D. WHEAT, Appellant,

v.

**MISSOURI BOARD OF PROBATION AND PAROLE, Respondent.**

**No. WD 52396.**

Missouri Court of Appeals, Western District.

Oct. 22, 1996.

Charles D. Wheat, Cameron, pro se.

Jeremiah W. (Jay) Nixon, Attorney General, John W. Simon, Assistant Attorney General, Jefferson City, for respondent.

Before ELLIS, P.J., and LOWENSTEIN and LAURA DENVIR STITH, JJ.

LAURA DENVIR STITH, Judge.

Charles D. Wheat is currently serving prison terms imposed for crimes committed in 1976. The parole statute in effect at the time the crimes were committed made parole mandatory if the statutory prerequisites to parole were satisfied. The legislature later amended the statute, giving the Missouri Board of Probation and Parole discretion whether to grant parole once the preconditions to parole are met. Applying the amended statute, the Board denied Mr. Wheat parole in 1994. The trial court denied Mr. Wheat's petition for an Alternative Writ of Mandamus compelling the Board to determine Mr. Wheat's eligibility for parole under the statute in effect at the time he committed his offenses. We find that Mr. Wheat had no liberty interest in application of the 1976 standards, and that because he was not entitled to release prior to enactment of the 1982 standards, their application by the Board does not violate the *ex post facto* clause of the Constitution. Accordingly, we affirm.

I. *FACTUAL AND PROCEDURAL BACKGROUND*

Charles D. Wheat was arrested on August 9, 1976, and charged with rape and sodomy. In 1977, after a bench trial, the judge found Mr. Wheat guilty of both crimes and sentenced him to 45 years in prison for each offense, the sentences to run concurrently.

The parole statute in effect at the time Mr. Wheat committed these offenses was Section 549.261, RSMo.1978. That statute required the Board to review case files and hold personal parole hearings at least once a year. In this review, the Missouri Board of Probation and Parole was required to determine whether a prisoner could be released without detriment to the community or to himself. If so, the statute stated the Board "shall" release the prisoner. This language has been interpreted to give the prisoner an unconditional right to parole once the statutory requirement was met.

In 1982, the legislature repealed Section 549.261 and enacted Section 217.690, RSMo. 1996. Under that section, the Board must still determine whether a prisoner can be released without detriment to the community or to himself. Even if that condition is met, however, parole is not mandatory; the Board may "in its discretion" decide whether to parole the inmate. In 1985, the Board also eliminated annual case file review and replaced it with personal parole hearings every two years. This increased the length of time between parole consideration hearings.

At the time of the passage of the revised statute in 1982, Mr. Smith was not yet entitled to parole under the 1976 statute. Mr. Smith was given a parole hearing in 1988. He was not paroled, but was placed in the Missouri Sexual Offender Program (MOSOP) and ordered to complete it before his next parole hearing. Regulations then in effect provided that placement in MOSOP is *typically* made within 12 to 24 months of an inmate's earliest presumptive release date. Mr. Wheat began the MOSOP program on October 1, 1988. He completed it on August 25, 1989. He was given another parole hearing in August, 1990. The Board determined he had not met the conditions for parole and denied parole to him.

In August 1994, Mr. Wheat received another parole hearing. The Board again refused to release Mr. Wheat on parole, finding that release "would depreciate the seriousness of the offenses committed and/or promote disrespect for the law." The language used by the Board is identical to language in the 1982 parole statute as amended; it was not contained in the 1976 statute in effect at the time of Mr. Wheat's offenses.

On September 1, 1995, Mr. Wheat filed a *pro se* petition in the Circuit Court of Cole County for a writ of mandamus. Mr. Wheat argued that his eligibility for parole should

have been determined under the statute in effect at the time he committed the offenses in 1976, and not under the statute in effect at the time of his parole hearing in 1994. Mr. Wheat requested the court to issue an order compelling the Board to hold a parole hearing applying the old statute and regulations. He also requested the court to order a personal parole hearing every year until he was granted parole. On January 12, 1996, the trial court denied his petition. Mr. Wheat then filed this appeal.

## II. *STANDARD OF REVIEW*

■ When reviewing a trial court's dismissal of a writ of mandamus, an appellate court's concern is whether the trial court reached the correct result. *State ex rel. Patterson v. Tucker*, 519 S.W.2d 22, 24 (Mo. App.1975). The court's decision will not be reversed if the court exercised its discretion lawfully and no abuse is shown. *Sampson Distributing Co. v. Cherry*, 346 Mo. 885, 143 S.W.2d 307, 309 (1940). "Therefore, we sustain the judgment of the trial court in a mandamus action unless no substantial evidence exists to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *State ex rel. Lupo v. City of Wentzville*, 886 S.W.2d 727, 730 (Mo.App.1994).

## III. *JURISDICTION*

■ Missouri Board of Probation and Parole first argues that an appeal is not the proper method of relief in this case and Mr. Wheat should have filed a petition for a writ in the next highest court. As the Board notes, where a preliminary writ is denied, the petitioner may not appeal but must file for the writ anew in the next highest court. *Williams v. Gammon*, 912 S.W.2d 80 (Mo. App.1995). By contrast, where a preliminary writ is granted and the court then determines on the merits whether the writ should be made permanent, or quashed, then appeal is the proper remedy. *State ex rel. Schaefer v. Cleveland*, 847 S.W.2d 867, 869–70 (Mo. App.1992). Finally, "Where the court below dismisses the petition following answer or motion directed to the merits of the controversy and in doing so determines a question

of fact or law" we will also treat the order as final and appealable. 847 S.W.2d at 870.

■ The trial judge's order in this case said he denied Mr. Wheat's petition. Before doing so, however, he issued a Show Cause Order to the Board. The Board then submitted a Response directed to the merits of the controversy, attaching exhibits. In his order, the trial judge made findings of fact and conclusions of law addressing and resolving substantive arguments in Mr. Wheat's petition. Because on this record it is unclear whether the trial judge went beyond a mere discretionary refusal to entertain the writ, we will treat this case as if a preliminary writ had been issued and then quashed, and thus will treat his denial of the writ as appealable. Therefore, the judge's order constitutes a final appealable decision.

## IV. *THE TRIAL COURT DID NOT ERR IN DETERMINING MR. WHEAT'S ELIGIBILITY FOR PAROLE UNDER THE CURRENT STATUTE AND REGULATIONS*

We must first determine which statute and regulations the Board actually applied when considering Mr. Wheat for release on parole. When the Board declined to release Mr. Wheat it stated, "the Board believes that your release at this time would depreciate the seriousness of the offenses committed and/or promote disrespect for the law." This language is almost a precise quotation of the current parole regulations, which state that parole may be denied if "release at this time would depreciate the seriousness of the offense committed or promote disrespect for the law." 14 C.S.R. 80–2.010(9)(A)(1) (1992).

■ The fact that the Board's finding used language taken from the current statute creates a rebuttable presumption that the Board used the current regulations in denying parole. This shifted the burden of going forward to the Board to show that it in fact applied the statute and regulations in effect at the time that he committed the offenses. *State ex rel. Shields v. Purkett*, 878 S.W.2d 42, 46 (Mo. banc 1994). Because the Board did not offer any evidence on this issue, it is established for the purposes of this appeal

that the Board used the current regulations in denying parole.

■ Mr. Wheat claims that this was error. He says he has a constitutional liberty interest in having his eligibility for parole decided under the statute and regulations that were in effect at the time he committed his offenses. As this Court recently noted, however, "[a] prisoner has no liberty interest in the application of the statutory and regulatory conditions for parole in effect at the time of the offense, rather than those currently in effect, unless he can show that he would have been entitled to parole under the older standard" before it was repealed. *Williams*, 912 S.W.2d at 84. Because Mr. Williams could not show he would have been entitled to parole before the new statute went into effect, we denied relief.

As in *Williams*, Mr. Wheat cannot show that he was entitled to parole before the old statute and regulations were repealed in 1982. Mr. Wheat claims only that he had satisfied the statutory and regulatory conditions for parole by November 1987. Mr. Wheat offers no record support for even this proposition, and we find none.[1] Even were he correct that in 1987 he satisfied the conditions for parole under the old statute, however, it was no longer in effect in 1987 and he had no liberty interest in its application.

■ Mr. Wheat also claims that he had a liberty interest in being paroled because he had completed the MOSOP Program. The regulations do not entitle a prisoner to release simply because the prisoner completes the program, however, and the Board never informed Mr. Wheat he would be released simply because he completed the program. Even if he is correct in his belief that prisoners are *typically* released in the year or so after completing the program, that would not entitle any particular program graduate to release at a specific time. The standards for release are those set out in the statute, and even then release is firmly committed to the Board's discretion. If we were to require all inmates to be released after completing this program, we would undercut the Board's dis-

cretion and we would not be following the mandates of the current parole statute.

■ Next, Mr. Wheat claims that application of the new parole statute violates the *ex post facto* clauses of the United States and Missouri Constitutions. In order for a law to violate the *ex post facto* clause, it must be retroactive in the sense that it applies to events occurring before the law was enacted. In addition, it must either change the definition of a crime or increase the punishment for a crime already committed. *State ex rel. Cavallaro v. Groose*, 908 S.W.2d 133, 136 (Mo. banc 1995).

The new Missouri parole statute did have a retroactive effect in that it applied to Mr. Wheat's term of imprisonment, which began before passage of the statute. It did not, however, either change the definition of his crime or increase the punishment for his crime. The Board denied Mr. Wheat release due to the seriousness of his offense. As the Supreme Court noted in *Cavallaro*, this was also a valid reason to deny parole under the old statute. *Cavallaro*, 908 S.W.2d at 136.

■ Mr. Wheat also argues that he is entitled to a personal parole hearing every year because this was the practice at the time he committed his offenses. The United States Supreme Court has held that legislative adjustments to parole procedures do not violate the *ex post facto* clause, even if they may have some speculative or attenuated risk of affecting the length of imprisonment. *California Dept. of Corrections v. Morales*, —— U.S. ——, ——–——, 115 S.Ct. 1597, 1602–03, 131 L.Ed.2d 588 (1995). *Accord, Cavallaro*, 908 S.W.2d at 136. That holding is applicable here.

For these reasons, we affirm denial of Mr. Wheat's Petition for Writ of Mandamus.

All concur.

---

1. He seems to base this statement on an unsupported claim that he was entitled to release once he served 25 percent of his sentence. The stat-

utes and regulations in effect since he committed his crimes have never provided an absolute right to parole under those circumstances.