STATE of Missouri ex rel.
GATER, Petitioner,

v.

BURGESS, Warden, Western Reception Diagnostic Correctional Center, Respondents.

No. WD 63392.

Missouri Court of Appeals,
Western District.

March 23, 2004.

Ruth Sanders, Kansas City, for petitioner.

Jeremiah W. (Jay) Nixon, Atty. Gen., Lisa J. Berry, Jefferson City, MO, for respondent.

Before THOMAS H. NEWTON, P.J., PAUL M. SPINDEN and RONALD R. HOLLIGER, JJ.

THOMAS H. NEWTON, Presiding Judge.

Mr. Jerry Gater was convicted on March 27, 1992, in the circuit court of Scott County on three counts of the sale of a controlled substance, and sentenced to eight years in the Department of Corrections (DOC). He was released on parole on December 19, 1998, subject to a variety of conditions. On October 28, 1999, in Jackson County, he was arrested for possession of crack cocaine and trafficking. On April 5, 2000, he was arrested for a parole violation, due to the arrest on October 28, 1999, and at that time he admitted that if tested he would test positive for marijuana.

On April 17 and 20, 2000, two different field violation reports were filed by the Missouri Department of Corrections Board or Probation and Parole. Mr. Gater was found to have committed three parole violations: (1) violation of Parole Condition # 1, by allegedly committing the felony of trafficking drugs in the second degree on October 28, 1999; (2) violation of Parole Condition # 6, by allegedly being in possession of crack cocaine on October 28, 1999; and (3) violation of Parole Condition # 6, by admitting to the use of marijuana on April 5, 2000. The report from April 17th recommended revocation of his parole and the report from the 20th found probable cause in reference to the violations. On April 25, 2000, Mr. Gater's parole was revoked because of all three violations, and he served the remainder of his 1992 sentence in prison.

On May 15, 2000, Mr. Gater was indicted for the felony of trafficking in the second degree [1] based on the October 28, 1999, arrest. He reached the maximum discharge date for his 1992 conviction on July 13, 2001, and was released. On September 17, 2001, Mr. Gater pled guilty to the 1999 trafficking charge in the circuit court of Jackson County. On November 20, 2001, he was sentenced to ten years in the DOC and he began to serve his sentence on November 27, 2001. The circuit court stated in its judgment that Mr. Gater "shall receive sixteen (16) months credit for time served," but the DOC has not credited Mr. Gater with those sixteen months. [2] The sixteen-month period includes when Mr. Gater was taken into custody on April 5, 2000, to his release from prison on July 13, 2001.

---

1. "A person commits the crime of trafficking drugs in the second degree if . . . he possesses or has under his control, purchases or attempts to purchase, or brings into this state more than two grams of a mixture or substance described in subsection 2 of this section which contains cocaine base." § 195.223.3 RSMo.2000. By charging Mr. Gater with this crime, the state combined the two reasons for his arrest, possession and trafficking, into one crime, based on the amount of the drug in his possession.

2. Mr. Gater was credited with fifty-eight days of credit for the time from his guilty plea on September 17, 2001, to when he began serving his sentence on November 27, 2001, so there is no conflict about credit from that time.

Mr. Gater filed a petition for writ of habeas corpus in the circuit court of Buchanan County, seeking the sixteen months of credit. That writ was denied. Thereafter, Mr. Gater filed this writ of habeas corpus in our court, claiming that section 558.031 [3] compels respondent to credit his current trafficking sentence with the sixteen months he spent in jail after his parole was revoked.

 Mr. Gater's writ of habeas corpus claims that he was unlawfully confined because the DOC had failed to give him sixteen months of jail-time credit as required under section 558.031. [4] He now acknowledges that a writ of mandamus, not a writ of habeas corpus, is the appropriate writ to compel the DOC to perform its duty, and correctly asserts that we may treat his petition for writ of habeas corpus as a petition for writ of mandamus. *State ex rel. Haley v. Groose*, 873 S.W.2d 221, 223 (Mo. banc 1994). We, therefore, consider this as a petition for a writ of mandamus.

Mr. Gater claims that he is entitled to sixteen months of jail-time credit, from April 5, 2000, to July 13, 2001, under section 558.031, which states in pertinent part:

> A sentence of imprisonment shall commence when a person convicted of a crime in this state is received into the custody of the department of corrections or other place of confinement where the offender is sentenced. Such person shall receive credit toward the service of

a sentence of imprisonment for all time in prison, jail or custody after the offense occurred and before the commencement of the sentence, when the time in custody was related to that offense, except:

> (1) Such credit shall only be applied once when sentences are consecutive.

Mr. Gater asserts that the time he spent in custody because of his parole revocation was "related to" his current offense of drug trafficking. The DOC asserts that Mr. Gater's time in custody was not related to his current offense and that even if it was related he is not entitled to any credit because his sentences are consecutive.

Mr. Gater relies on *Goings v. Missouri Department of Corrections*, 6 S.W.3d 906 (Mo. banc 1999), to claim that his time in custody was "related to" his current offense. In *Goings*, Mr. Goings was on parole from Franklin County convictions when he was arrested in 1996 in Stoddard County on a felony stealing charge. *Id.* at 906–07. Because Mr. Goings had violated his parole, he was returned to the DOC in August 1996. *Id.* at 907. He was sentenced on the Stoddard County charge in December 1997 to a five-year term that would be served concurrently with his earlier sentences. *Id.* The DOC refused to give Mr. Goings credit for time served from August 1996 to December 1997, pursuant to section 558.031. *Id.* Mr. Goings brought a declaratory judgment action challenging this refusal. *Id.*

---

3. Unless otherwise indicated, all statutory references are to RSMo.2000.

4. Mr. Gater also claimed that the circuit court's judgment was null and void because the court exceeded its jurisdiction by giving him jail-time credit in the judgment. Determination of jail-time credit is solely an administrative function, not a judicial one. *State of Missouri ex rel. Jones v. Cooksey*, 830 S.W.2d 421, 425 (Mo. banc 1992). Mr. Gater has

since dropped this claim, presumably because this order by the circuit court did not render the judgment void; the order simply had no effect. *See Belton v. Moore*, 112 S.W.3d 1, 5 (Mo.App. W.D.2003) (stating that the circuit court lacked the authority to give defendant credit for time served; only the DOC can do that, and the court's judgment did not alter defendant's sentence).

The Missouri Supreme Court stated that the dispositive issue was "whether Goings was 'in custody related to' the offense for which he was sentenced in December 1997 and, therefore, should be credited with time served in the department of corrections prior to that sentencing." *Id.* The State argued that section 558.031 should not apply because Mr. Goings was not entitled to be free on bond because he had violated his parole. *Id.* at 908. The court dismissed this argument, stating that section 558.031 is not so limited; it "requires only that the time in custody be 'related to' the offense." *Id.* The court found that the time Mr. Goings was in custody before being sentenced in Stoddard County was "related to" that Stoddard County offense because that charge resulted in the revocation of his parole for the Franklin County sentence. *Id.; see also, State ex rel. Nixon v. Kelly,* 58 S.W.3d 513, 519 (Mo. banc 2001) (stating that in *Goings* the time in custody was related to the second conviction in that "[b]ecause of his arrest for Charge 2, his parole on Charge 1 was revoked and he was placed in prison"). The court then stated that while Mr. Goings' incarceration was clearly "related to" his Franklin County convictions, the incarceration could also be "related to" the current offense because "related to" is a broad term, allowing his custody to be "related to" both offenses and the statutory credit to apply. *Goings,* 6 S.W.3d at 908. Mr. Goings, therefore, was entitled to credit for the time he was in custody after his arrest on the Stoddard County charge and prior to sentencing on that charge. *Id. See also Williams v. State,* 26 S.W.3d 605, 606–08 (Mo.App. W.D.2000) (where defendant's parole was revoked because his arrest and indictment for forgery was a parole violation, defendant was entitled to credit on the new sentence under section 558.031 for the time he spent in jail between when he was arrested for the parole violation and when he was sentenced in the forgery; this case was indistinguishable from *Goings* ).

■ We agree with Mr. Gater that his case is very similar to *Goings.* Mr. Gater was on parole from his 1992 offense when he was arrested for drug trafficking and possession of crack cocaine. His parole was revoked due to his arrest for drug trafficking, for possession of crack cocaine when he was arrested for drug trafficking, and for the use of marijuana, and he was returned to custody to finish his 1992 sentence. Like Mr. Goings, Mr. Gater's time in custody finishing his 1992 sentence was "related to" the 1999 trafficking and possession offenses because the charge of felony trafficking in the second degree resulted in revocation of his parole, although there was also another reason his parole was revoked. By possessing crack cocaine and trafficking drugs, Mr. Gater both violated his parole, which was thereby revoked, and committed a criminal offense that resulted in his conviction for trafficking. While the DOC is correct that Mr. Gater's time in custody was "related to" the marijuana use, that is not inconsistent with our finding that his custody was also "related to" the current offense of drug trafficking.[5] *See Goings,* 6 S.W.3d at 908. His parole was revoked for several reasons, and the current offense was one of those reasons. The fact that there was another reason his parole was revoked does not mean that he is not entitled to credit under section 558.031, because the statute is not so limiting as to require that

5. Because felony trafficking in the second degree basically combines the possession and trafficking, the possession of crack cocaine is directly related to his conviction for drug trafficking. We believe, therefore, that the other reason his parole was revoked is only the marijuana use.

the reason for being in custody must be "related to" *only* the offense. *See id.* "The statute's use of the very broad term 'related to' instead of, for example, 'caused by' or 'the result of' compels the conclusion that his custody can be 'related to' both offenses and the statutory credit will nevertheless apply." *Id.*

■ The reasons for revocation must be viewed as a whole.[6] If one basis for revocation is the crime for which a defendant is convicted and sentenced, then the time in custody is "related to" that convicted offense. Had Mr. Gater's parole been revoked solely for the marijuana use, then he would not be entitled to jail-time credit because his time in custody would not be "related to" the current offense. *Priester v. Mo. Dep't of Corr.*, 119 S.W.3d 140, 141–42 (Mo.App. W.D.2003) (holding that where there were two possible grounds to revoke defendant's probation and only one ground was relied on to revoke his probation, defendant was not entitled to jail-time credit when he was later convicted on the offense that constituted the other ground; it did not matter that the authorities learned about the ground for revocation while investigating the offense for which he was convicted, "[s]ection 558.031 requires only that *custody* be related to the offense on which credit is sought"; because his custody was not related to the convicted offense, he did not get any credit). Mr. Gater's parole was revoked for three reasons and the first two reasons are "related to" the current offense, so his time in custody was "related to" the offense.

The DOC's contentions that *Goings* is not controlling and that *Kelly* has narrowed *Goings* to a "but for" rule are without merit. In *Kelly*, Mr. Haldeman was convicted of two counts of sexual assault in the first degree, sentenced to seven years imprisonment on the first count, and granted a new trial on the second count. 58 S.W.3d at 515. He began serving his sentence on the first conviction and was retried and convicted on the second conviction. *Id.* The Missouri Supreme Court found that he was not entitled to jail-time credit on the second conviction for time spent in prison on the first conviction before his second conviction. *Id.* at 519. It did not matter that both convictions came from the same underlying facts or that they were tried initially at the same time; the key to credit under section 558.031 is that the time in custody must be "related to" the second conviction. *Id.* at 518–19. Mr. Haldeman's time in custody on his first conviction was not also time in custody "related to" his second conviction; he would have been in prison on his first conviction, even without his arrest, trial, or conviction on the second. *Id.* at 519.

*Kelly* did not narrow the *Goings* rule, it applied section 558.031 and *Goings* to its facts and found that the defendant was not entitled to any credit because his time in custody on the first conviction was completely unrelated to the time in custody on the second conviction. *Kelly* is very different from the present case and does not control its result. In this case, the parole revocation was clearly "related to" Mr. Gater's conviction for drug trafficking; the trafficking was a basis for the revocation. Because the reasons his parole was revoked related to the current offense, Mr. Gater's custody was "related to" the offense for which credit is sought and he is entitled to the sixteen months of jail-time credit.

■ The DOC maintains that even if Mr. Gater's custody was "related to" the current offense, he still should not receive that credit under the first exception to the statute. § 558.031.1(1). The DOC asserts

---

6. Because his parole was revoked on all three grounds, we cannot know whether his parole would have been revoked if all three grounds did not exist, and we will not speculate.

that because Mr. Gater had already completed his 1992 sentence when he began serving his 1999 trafficking sentence, his sentences are consecutive. Further, DOC argues that he received the credit for those sixteen months on his 1992 sentence, so the credit cannot also be given to his current sentence because the two sentences did not run concurrently.

A concurrent sentence is one in which there are "[t]wo or more terms of imprisonment, all or part of each term of which is served simultaneously and the prisoner is entitled to discharge at the expiration of the longest term specified." BLACK'S LAW DICTIONARY 291 (6th ed.1990). A consecutive sentence, on the other hand, exists "[w]hen one sentence of confinement is to follow another in point of time...." BLACK'S LAW DICTIONARY 304 (6th ed.1990).

Since Mr. Gater's sentence for the 1992 conviction was completed before he was convicted for the 1999 drug trafficking, the circuit court could not have ordered that he serve the sentences concurrently. The DOC asserts that Mr. Gater's sentences are "situationally consecutive" because they follow one another. There are no cases discussing "situationally consecutive" sentences, and in most cases where the question of whether sentences are concurrent or consecutive is an issue, the court specifies how the sentences will be served. *See e.g., Kelly,* 58 S.W.3d at 515 (Mr. Haldeman's second sentence was ordered to run concurrently with the sentence he was already serving); *Goings,* 6 S.W.3d at 907 (Mr. Goings was sentenced to a five-year term to be served concurrently with his earlier sentences); *State ex rel. Lightfoot v. Schriro,* 927 S.W.2d 467, 469 (Mo. App. W.D.1996) (defendant was ordered to serve two consecutive five-year sentences, but they were to run concurrently with the sentences he was serving in Kansas).

Such specification was impossible in this case because Mr. Gater was not serving any other sentence when he was convicted and sentenced for the 1999 drug trafficking offense. Had he not reached his maximum discharge date before November 27, 2001, he would have still been in custody for the 1992 charges when his current sentence began. We cannot guess whether the circuit court would have ordered him to serve his current ten-year sentence concurrently or consecutively with the 1992 sentence. If Mr. Gater is entitled to the jail-time credit under section 558.031 because his time in custody was "related to" the drug trafficking crime, he should not lose that credit simply because his 1992 sentence ended before he was sentenced on the later conviction. Calling his sentences "situationally consecutive" merely states that he completed one sentence before he received his current sentence, but such terminology alone does not bring this case within the ambit of the exception. We will not create a new type of sentence to tie sentences together when a defendant has already completed one sentence before receiving a second sentence. The fact that Mr. Gater did not receive his current sentence until after he completed his 1992 sentence does not preclude him from a jail-time credit to which he is otherwise entitled.

Mr. Gater is entitled to a jail-time credit of sixteen months for the time he spent in custody from April 5, 2000, to July 13, 2001. He was in jail during that time because his parole was revoked. One reason for that revocation was drug trafficking, the offense for which he is now serving prison time. Therefore, his time in jail was "related to" the current offense. Mr. Gater's writ for mandamus is granted.

PAUL M. SPINDEN and RONALD R. HOLLIGER, JJ. concur.