Leon W. PETTIS, Appellant,

v.

MISSOURI DEPARTMENT OF CORRECTIONS, Respondent.

No. WD 69398.

Missouri Court of Appeals, Western District.

Nov. 12, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 23, 2008.

Application for Transfer Denied Feb. 24, 2009.

Rosemary E. Percival, Kansas City, MO, for Appellant.

Shaun J. Mackelprang, Jefferson City, MO, for Respondent.

Before: THOMAS H. NEWTON, C.J., VICTOR C. HOWARD, and ALOK AHUJA, JJ.

THOMAS H. NEWTON, Chief Judge.

Mr. Leon Pettis appeals the circuit court's grant of judgment on the pleadings for the Department of Corrections (DOC), denying his request for a declaratory judgment that he was entitled to jail-time credit under section 558.031.[1] We affirm.

### Factual and Procedural Background

Mr. Leon Pettis was convicted of first-degree murder in Jackson County and sentenced to life in prison in 1981. He was subsequently given a "scheduled release date" of September 22, 2004. *See Pettis v. State*, 212 S.W.3d 189 (Mo.App. W.D.2007). However, ten months prior, on November 22, 2003, Mr. Pettis was charged with possession of heroin. In January of 2004, Randolph County lodged a detainer against him. In March of 2004, Mr. Pettis received notice that his scheduled release date was cancelled. A new parole hearing was scheduled.

On April 21, 2004, Mr. Pettis pled guilty to one count of possession of a controlled substance within a correctional institution. The plea court sentenced Mr. Pettis to four years in prison running consecutive to his life sentence. Mr. Pettis appealed, asserting ineffective assistance because plea counsel misadvised Mr. Pettis and the sentencing court on the effect of imposing a consecutive sentence on Mr. Pettis's parole eligibility. On January 30, 2007, we vacated Mr. Pettis's sentence and remanded for re-sentencing. *Pettis*, 212 S.W.3d at 196. On February 21, 2007, Mr. Pettis was resentenced to five years running concurrent to his life sentence.[2]

July 10, 1981: Mr. Pettis is sentenced to life imprisonment with parole.

Nov. 22, 2003: Mr. Pettis is charged with possession as a Class C felony.

March 2004: Mr. Pettis receives notice that his scheduled release date of September 22, 2004 is cancelled.

April 21, 2004: Mr. Pettis pleads guilty to the possession charge. He is sentenced to four years running consecutive to his prior life sentence.

Jan. 30, 2007: Mr. Pettis's possession sentence is vacated and remanded for resentencing.

Feb. 21, 2007: Mr. Pettis is resentenced on the possession charge to five years running concurrent with his life sentence.

After being re-sentenced, Mr. Pettis sought a declaratory judgment ordering the DOC to credit him for 934 days served on the possession conviction—from April 21, 2004, the date of the vacated sentencing, to February 21, 2007, the date of the new sentencing. The DOC moved for judgment on the pleadings. The motion court granted the DOC's motion, and Mr. Pettis appeals.

### Standard of Review

On appeal from a judgment on the pleadings, we accept the facts alleged in the losing party's petition as true. *Wallingford v. Mo. Dep't of Corr.*, 216 S.W.3d 695, 696 (Mo.App. W.D.2007). We uphold the judgment if the facts pled by the losing party were insufficient as a matter of law. *Id.*

---

1. All statutory references are to RSMo 2000 and the Cumulative Supplement 2007 unless otherwise indicated.

2. Mr. Pettis provided no transcript of the resentencing hearing on appeal.

## Legal Analysis

Mr. Pettis bases his arguments in section 558.031, which—in general—credits inmates with time spent in custody while awaiting judgment and sentencing. Mr. Pettis maintains that the statute's subsection one and subsection four require that he receive time credit for his incarceration from April 2004 to February 2007.

### Subsection One

Subsection one in relevant portions states that a person convicted of a crime:

> shall receive credit toward the service of a sentence of imprisonment for all time in prison, jail or custody after the offense occurred and before the commencement of the sentence, *when the time in custody was related to that offense,* except:
>
> (1) Such credit shall only be applied once when sentences are consecutive[.]

§ 558.031.1 (emphasis added).

Under this subsection, Mr. Pettis argues his time in custody from April 2004 to February 2007 was "related to" the possession offense because his scheduled release date was cancelled after he was charged with possession. The DOC asserts that because Mr. Pettis was already serving a life sentence, this time in custody was unrelated to the possession charge. *See Mudloff v. Mo. Dep't of Corr.,* 53 S.W.3d 145 (Mo.App. W.D.2001); *State ex rel. Nixon v. Kelly,* 58 S.W.3d 513 (Mo. banc 2001).

 When construing a statute, we are to give effect to the intent of the legislature. *Mudloff,* 53 S.W.3d at 147. The general intent of subsection one is to credit the time an accused spends in jail awaiting sentence and to negate disparities between inmates who are able to post bond and indigents who cannot. *Goings v. Mo.*

*Dep't of Corr.,* 6 S.W.3d 906, 908 (Mo. banc 1999). Time in custody is generally "related to" a sentence, and thus eligible for credit within the subsection, if the inmate could have been free from custody absent the charge. *Mikel v. McGuire,* 264 S.W.3d 689, 691–92 (Mo.App. W.D.2008).

 As Mr. Pettis correctly asserts, *Goings* highlighted the legislature's choice of the broad language "related to" instead of the stricter phrases "caused by" or "the result of." 6 S.W.3d at 908. "Related to" may be established where a subsequent offense is one of the causes of time in custody, as opposed to the only cause. *State ex rel. Gater v. Burgess,* 128 S.W.3d 907, 910 (Mo.App. W.D.2004). Thus, when an inmate is out of prison on parole and his freedom is revoked because of a subsequent charge, the time in custody may be credited as "related to" that subsequent sentence, even while being credited to the prior sentence. *Goings,* 6 S.W.3d 906; *Gater,* 128 S.W.3d at 910–11. However, some causal relationship between the inmate's time in custody and the offense must be established. *Priester v. Dep't of Corr.,* 119 S.W.3d 140, 142 (Mo.App. W.D. 2003); *Belton v. Moore,* 112 S.W.3d 1, 4 (Mo.App. W.D.2003). If an inmate is in custody, has no eligibility for release, and is subsequently charged with another offense, the time in custody is generally *not* "related to" the subsequent offense. *See Kelly,* 58 S.W.3d at 519; *Mudloff,* 53 S.W.3d at 150.

 Relying on *Goings* and related cases, Mr. Pettis argues that the cancellation of his scheduled release date is directly analogous to a parole revocation and is, therefore, sufficient to establish that his time in custody was "related to" the subsequent sentence. However, the cancelling of a scheduled release date is not, as Mr. Pettis argues, directly analogous to a parole revocation. "[P]arole release and pa-

role revocation are quite different. There is a crucial distinction between being deprived of a liberty one has, as in parole, and being denied a conditional liberty that one desires." *Greenholtz v. Inmates of Neb. Penal and Corr. Complex,* 442 U.S. 1, 9, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). Parole revocation must meet constitutional, statutory, and regulatory requirements that are not required for parole release. A parolee, for example, has a constitutional right to a preliminary hearing on probable cause as well as a right to a revocation hearing. *See Morrissey v. Brewer,* 408 U.S. 471, 485–488, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

By contrast, an inmate who is in custody has no constitutional or inherent right in early release. *State ex rel. Cavallaro v. Groose,* 908 S.W.2d 133, 134 (Mo. banc 1995). The Board of Probation and Parole has nearly unlimited discretion in determining whether an inmate may be scheduled for parole. *Id.* at 135; § 217.690. Moreover, even when scheduled, a release date "does not automatically entitle the inmate to be released." Mo. CODE REGS. ANN. tit. 14, § 80–2.010(8)(E) (2002). Release is "dependent upon a finding by the board that the inmate has a continued record of good conduct and an acceptable release plan." *Id.* The Board may reopen its decision where any new information comes to its attention. *Id.* at § 80–2.010(8)(F). The regulations also establish that an inmate is further subject to an additional "pre-release" review, as well as continued findings. *Id.* at § 80–2.010(12). After this latter review, the Board then takes one of the following actions: (1) approving the release date, (2) advancing or delaying the release date, (3) modifying release conditions, (4) cancelling the release and rescheduling, or (5) cancel-

ling the release and scheduling a reconsideration hearing. *Id.* The Board has a list of general policy factors it may consider, such as release not being in society's best interest, or whether release would depreciate the seriousness of the offense, but it is not limited to these considerations. *Id.* at § 80–2.010(9)(A).

A charge is "unrelated" to the time in custody where an inmate would have been in prison anyway. *Belton,* 112 S.W.3d at 4. In *Belton,* a second offense was unrelated because the prisoner was not entitled to bail on the first offense. *Id.* He "would have been in custody serving the sentence on his first offense regardless." *Id.* at 5. Similarly, in *Wallingford,* we stated that a second offense would be unrelated if a prisoner was not entitled to an appeal bond on the first offense. 216 S.W.3d at 697.

For time in custody to be "related to" an offense, there must be some right to be free from custody absent the subsequent offense—such as on parole, on bail, or on bond. Mr. Pettis cannot show an analogous right. His "scheduled release date" was ten months subsequent to his possession charge. Whether he would be released on that date was subject to further procedural steps, his conduct irrespective of the charge, and the Board's discretionary review and approval. With the hurdles he still had to pass, Mr. Pettis cannot show with assurance that absent the possession charge, he would have been entitled to release. Where an inmate has shown no entitlement to be released from custody, a subsequent cancellation of that date does not merit time credit under the statute. The relationship is simply too attenuated. Mr. Pettis's first point is denied.

### Subsection Four

■ Mr. Pettis further argues he is entitled to credit under subsection four, which provides:

> If a sentence of imprisonment is vacated and a new sentence imposed upon the offender for that offense, *all time served under the vacated sentence shall be credited against the new sentence* ....

§ 558.031.4. (emphasis added).[3]

■ Mr. Pettis appealed his possession sentence, his consecutive sentence was vacated, and a concurrent sentence was imposed. At issue is whether the time Mr. Pettis spent appealing his consecutive sentence was "time served under the vacated sentence." The DOC argues, and the motion court found, that Mr. Pettis's time on appeal was not "time served" because he was already serving a life sentence and the consecutive sentence had not yet begun to run.

We are required to presume that the legislature intended what the statute says by clear and unambiguous language. *State v. Gilmore,* 797 S.W.2d 802, 811 (Mo. App. W.D.1990). Subsection four grants credit only where time has been served "under the vacated sentence." Thus, the provision would not mandate credit unless Mr. Pettis had actually served time on the vacated sentence. A consecutive sentence is one which follows another in time. BLACK'S LAW DICTIONARY 304 (6th ed.1990). Because Mr. Pettis was serving a life sentence, until this sentence was finished, he could not serve time under the consecutive sentence. Without the punishment having

been exacted, there is no corresponding requirement for credit.

■ Furthermore, the reading of the statute Mr. Pettis urges is prohibited by our canons of interpretation. The provision that is currently subsection four was amended in 1995. The prior version provided that:

> If a sentence of imprisonment is vacated and a new sentence is imposed on the defendant for the same offense, *the new sentence is calculated as if it had commenced at the time the vacated sentence was imposed,* and all time served under the vacated sentence shall be credited against the new sentence.

§ 558.031.3 RSMo 1994 (emphasis added). Under this former provision, the concurrency of Mr. Pettis's corrected sentence would be calculated as if it had commenced at the time his vacated consecutive sentence was imposed—in April of 2004—consequently requiring Mr. Pettis to receive credit during the time of his appeal. However, this middle clause was stricken when the provision was amended. We must read an amendment as purposeful: "[w]e are not to conclude that the legislature's deleting significant terms from its statutes is meaningless." *State v. Bouse,* 150 S.W.3d 326, 334 (Mo.App. W.D.2004). While it is conceivable the legislature did not anticipate these facts and this result from its amendment, we cannot read language into a statute which has been removed. Mr. Pettis's second point is denied.

**3.** The provision serves to codify a Constitutional mandate. The Fifth Amendment guarantee against multiple punishments for the same offense requires that a person who has served part of an improperly imposed sentence be credited for time served where a later sentence is properly imposed. *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) (time served under a voided conviction must be credited toward the subsequently imposed sentence), overruled in part on other grounds, *Alabama v. Smith,* 490 U.S. 794, 798–803, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989); *State v. Carter,* 443 S.W.2d 176, 177 (Mo.1969) (ordering credit on defendant's subsequent sentence where prior sentence was vacated).

## Conclusion

For the foregoing reasons, we affirm.

VICTOR C. HOWARD and ALOK AHUJA, JJ., concur.