

# MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| JAMES YOWELL, | ) | |
| | ) | WD79200 |
| Respondent, | ) | |
| v. | ) | OPINION FILED: |
| | ) | |
| MISSOURI DEPARTMENT OF | ) | May 3, 2016 |
| CORRECTIONS, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Cole County, Missouri**
**Honorable Daniel Richard Green, Judge**

**Before Division Three:**
**James Edward Welsh, P.J., Alok Ahuja, C.J., and Thomas H. Newton, J.**

The Missouri Department of Corrections (The Department) appeals a trial court judgment awarding Mr. James Yowell jail-time credit from January 4, 2012, to February 5, 2012, and from February 6, 2012, until September 6, 2013. We affirm in part and reverse in part.

The facts are outlined initially in the diagram below:



Mr. James Yowell pleaded guilty to driving while intoxicated (DWI) as a persistent offender in the circuit court of Crawford County on August 13, 2002, and was placed on probation after serving 120 days of shock time. On May 20, 2007, Mr. Yowell was charged with DWI as a chronic offender in the circuit court of Phelps County. (2007 Phelps).

Mr. Yowell received three probation-violation reports while on probation in the Crawford County case. The first violation report cited a violation of special condition #11 for consuming alcohol and recommended that Mr. Yowell remain on probation. The second violation report cited violations of law (DWI) and special condition #11 and recommended that Mr. Yowell remain on probation. The conduct

alleged in the second probation violation led to the first of two Phelps County DWI cases. (2011(1) and 2011(2)). The third violation report cited violations of law (DWI) and special condition #11. The conduct alleged in the third violation report recommended revocation of probation and that Mr. Yowell be ordered to enter and complete the 120-day institutional treatment program under section 559.115.[1] On January 4, 2012, Mr. Yowell's Crawford County probation was revoked and the four-year sentence was executed with the sentencing court retaining jurisdiction.[2] The sentencing court based its decision to revoke on the violation of special condition #11. Mr. Yowell was placed in the 120-day treatment program under section 559.115.

On February 6, 2012, Mr. Yowell was sentenced in all three Phelps County cases. Yowell was ordered into the 120 day institutional treatment program under section 559.115 and received three seven year sentences to be served consecutive to each other.

On March 29, 2012, Mr. Yowell was administratively terminated from the 120-day treatment program and was ordered to remain incarcerated to serve the three seven-year Phelps County sentences in full. On September 6, 2013, all three Phelps County sentences were vacated. On July 17, 2014, Mr. Yowell was resentenced in all three Phelps County cases and received new sentences of five, six, and seven years, respectively, to run concurrently with each other. Mr. Yowell was granted parole in the Crawford County case and was released on September 17, 2013. The Department granted credit to Mr. Yowell's 2007 Phelps County case for the time served between February 6, 2012, and September 6, 2013. The Department, however, refused to

---

[1] Statutory references are to RSMo 2000 as updated in cumulative supplements, unless otherwise indicated.

[2] The credit for the Crawford County sentence is not in question on this appeal.

3

grant Mr. Yowell any jail-time credit on his 2011 Phelps County cases for this time period.

In May 2015, Mr. Yowell filed a petition for declaratory judgment, asking for credit in all three of his Phelps County cases from January 4, 2012, until October 13, 2013. Both parties filed motions for summary judgment. At the motions hearing, Mr. Yowell conceded that he was not entitled to jail-time credit from September 6, 2013, through October 13, 2013. The trial court entered its judgment granting Mr. Yowell's motion for summary judgment and held that Mr. Yowell was entitled to jail-time credit on all three Phelps County cases from January 4, 2012, until September 6, 2013. The Department appeals.

Appellate review of an order granting summary judgment is *de novo*. *Tolentino v. Starwood Hotels & Resorts Worldwide, Inc.*, 437 S.W.3d 754, 757 (Mo. banc 2014). A summary judgment decision is correct when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The record is reviewed in the light most favorable to the party against whom judgment was entered, and the non-moving party is granted the benefit of all reasonable inferences from the record. *Id*. at 376. Summary judgment may be affirmed under any theory that is supported by the summary judgment record. *Kesterson v. Wallut*, 157 S.W.3d 675, 679 (Mo. App. W.D. 2004).

4

## Legal Analysis

In the first point on appeal, the Department asserts that the trial court erred in finding Mr. Yowell entitled to jail-time credit from January 4, 2012, until February 5, 2012, on his 2007 and 2011 Phelps County cases.

The Department argues Mr. Yowell should not be entitled to jail-time credit from January 4, 2012, until February 5, 2012, because his probation revocation was not caused by his Phelps County offenses meaning his time in custody was not related to the 2007 and 2011 Phelps County cases under section 558.031. We disagree in part.

Section 558.031.1 states that a person is entitled to "credit toward the service of a sentence of imprisonment for all time in prison, jail or custody after the offense occurred and before the commencement of the sentence, when the time in custody was related to that offense." "In construing the statute, we are guided by the principle that criminal statutes must be 'construed strictly against the [s]tate and liberally in favor of the defendant.'" *Goings v. Mo. Dep't of Corr.*, 6 S.W.3d 906, 908 (Mo. banc 1999). "[T]he Missouri Supreme Court has interpreted 'related to' as a 'very broad term' that is not restricted to 'caused by' or 'the result of' such that a person's 'custody can be "related to" two offenses and the statutory credit will nevertheless apply." *Mikel v. McGuire*, 264 S.W.3d 689, 692 (Mo. App. W.D. 2008) (citing *Goings*, 6 S.W.3d at 908). "For time in custody to be 'related to' an offense, there must be some right to be free from custody absent the subsequent offense." *Miller v. Mo. Dep't of Corr.*, 338 S.W.3d 400, 406 (Mo. App. W.D. 2011). "However, 'related to' is only established where *the subsequent offense* is one of the *causes* of

time in custody, *as opposed to the only cause.*" *Id.* at 404. Thus, "the person has to prove that the subsequent offense would have prevented his release from custody on the prior offense." *Mikel*, 264 S.W.3d at 692. "Generally, credit for time spent in custody is unavailable for offenses unrelated to the one underlying the sentence." *Goings*, 6 S.W.3d at 908.

The Department argues that Mr. Yowell's Crawford County probation revocation was not caused by the DWI arrests underlying his 2007 and 2011 Phelps County cases and was instead based on the consumption of alcohol in violation of probation special condition #11. It asserts that, because the probation revocation was not based on any Phelps County offense, the revocation is not related, and thus Mr. Yowell is not entitled to jail-time credit. The Department bases its argument[3] on *Priester v. Missouri Department of Corrections*, 119 S.W.3d 140 (Mo. App. W.D. 2003). In *Priester*, the petitioner was investigated for murder while on probation. *Id.* The investigation led to the discovery that Priester was in possession of a firearm on a date other than the murder date. *Id.* at 140-41. Priester's probation was revoked for possessing the firearm on a date other than that of the murder. *Id.* at 141. Priester was later convicted of second-degree murder and sought to have time spent on the

---

[3]The Department also cites *State ex rel. Nixon v. Kelly*, 58 S.W.3d 513 (Mo. banc 2001), to bolster its argument that a factual comparison of the law violation and special conditions violation is unlawful. In *Kelly*, the petitioner argued that two separate charges for sexual assault involving the same victim and similar facts were related. *Id.* at 515. The Missouri Supreme Court held that "it is not the specific facts underlying two convictions, or the fact that two charges were initially tried at the same time and involved the same victim, that is determinative of jail-time credit." *Id.* at 518. The court further stated that it was the relationship between the second conviction and the time in custody that was key to the section 558.031 analysis. *Id.* at 518-519. Mr. Yowell does not claim that the Crawford and Phelps sentences are related because they are both for DWI. Regardless, the Department argues that *Kelly* makes improper an analysis of the violation to determine the relationship to the subsequent offense at issue. Nothing in *Kelly* supports this assertion. Instead, *Kelly* simply highlights the importance of the relationship between time in custody and the conduct, and the irrelevance of the factual similarities between the two convictions. *Id.* at 518. Thus, the Defendant's reliance on *Kelly* is misplaced.

6

weapon possession charge credited to his murder sentence because the two were "related." *Id*. The court held that his confinement resulting from the revocation of his probation was not related to his subsequent conviction and sentence for murder and armed criminal action. *Id*. The court found that the "probation revocation was independent of, and would have occurred whether or not Priester committed the murder and armed criminal action offenses." *Id*. at 142.

As to Mr. Yowell's 2007 and 2011(1) Phelps County cases, the Department's assertion is correct. The revocation of Mr. Yowell's Crawford County probation was based on his consumption of alcohol on March 17, 2011(2011(2)), a direct violation of special condition #11. The consumption on March 17, 2011, is isolated from Mr. Yowell's consumption of alcohol on August 26, 2010, and October 13, 2010, because each of these violations resulted in a separate probation violation. In addition, after the consumption of alcohol on August 26, 2010, and October 13, 2010, Mr. Yowell remained on probation, that is, he retained the right to be free from custody. Although Mr. Yowell relinquished the right to be free from custody after his consumption of alcohol on March 17, 2011, the conduct underlying his 2007 and 2011(1) Phelps County cases was not one of the grounds for the revocation of his Crawford County probation on January 4, 2012. Therefore, Mr. Yowell cannot successfully prove that the 2007 and 2011(1) charges prevented him from remaining free on probation on the Crawford County case. The time Mr. Yowell spent in custody following his Crawford County probation revocation is therefore not "related to" the 2007 and 2011(1) Phelps County cases, and jail-time credit should not be applied to these cases for Mr. Yowell's time in custody.

7

In response to Mr. Yowell's 2011(2) Phelps County case, however, the circumstances in *Priester* do not apply. In *Priester,* the possession of a firearm responsible for the revocation of probation occurred at a different time than the conduct responsible for the second-degree murder charge and sentence. *Id.* at 140-41. Contrarily, Mr. Yowell's "consumption of alcohol did not occur on a date other than the date of the offense." Furthermore, the court in *Priester* specifically held that "[t]he probation revocation was independent of, and would have occurred whether or not Priester committed, the murder and armed criminal action offenses." *Id.* at 142. In Phelps County 2011(2), however, the charge of driving while intoxicated would not exist without the consumption of alcohol. Therefore, unlike in *Priester*, where the conduct resulting in probation revocation was distinct from the conduct responsible for the murder charge, there is no separate conduct in Mr. Yowell's case. Instead, the incident that led to the new charge is the exact behavior that led to the probation violation and revocation, meaning that, without the consumption of alcohol, Mr. Yowell would remain free from custody. Thus, the probation violation of alcohol consumption and the Phelps County DWI cases are related, and Mr. Yowell is entitled to credit on Phelps County 2011(2) for the time served from January 4, 2012, to February 5, 2012. Point one is affirmed in part and denied in part.

In the second point, the Department argues that Mr. Yowell should not be entitled to jail-time credit from February 6, 2012, until September 6, 2013, on his newly imposed sentences for his 2011 Phelps County cases.[4] The Department makes this assertion because the vacated sentences for the 2011 Phelps County cases were

---

[4] The parties agree that Mr. Yowell is entitled to credit on his newly imposed sentence in his 2007 Phelps County case for the time he spent serving the vacated sentence in that matter from February 6, 2012, until September 6, 2013, under subsection 558.031.4.

8

originally ordered to be served consecutively to his 2007 vacated Phelps County case. Thus, the Department asserts that Mr. Yowell was only serving the vacated sentence for the 2007 Phelps County case during this time period and should receive credit only for this time on the newly imposed sentence for the 2007 Phelps County case. We agree.

The Department argues that section 558.031.4 controls this case because it regulates credit an offender receives when a sentence is vacated and a new sentence is imposed for that same offense. Section 558.031.4 provides:

> If a sentence of imprisonment is vacated and a new sentence imposed upon the offender for that offense, all time served under the vacated sentence shall be credited against the new sentence, unless the time has already been credited to another sentence as provided in subsection 1 of this section.

Applying section 558.031.4 to Mr. Yowell's 2007 Phelps County conviction, it is plain that he is entitled to credit on his new sentence for the time he served before the new sentence was imposed. From February 6, 2012, to September 6, 2013, Mr. Yowell *was* "serving time" under the vacated sentence for his 2007 Phelps County conviction, because the sentence on his 2007 Phelps County conviction was ordered to run concurrently with his sentence from the Crawford County DWI. The Department has granted Mr. Yowell credit against his 2007 Phelps County conviction for this time period.

The dispute between the Department and Mr. Yowell concerns whether he was *also* entitled to credit for this time period, with respect to his 2011 Phelps County convictions. We believe that, under section 558.031.4, the answer is "no." Between February 6, 2012, and September 6, 2013, Mr. Yowell was not "serving time" on the

9

vacated sentences for his 2011 Phelps County convictions. At the time, the sentences for his 2011 convictions had been ordered to run *consecutively* to his sentence for the 2007 Phelps County conviction, and the sentences for the 2011 convictions had not yet begun to run. Moreover, by crediting the time between February 6, 2012, and September 6, 2013, to Mr. Yowell's new sentence for his 2007 Phelps County conviction, he receives credit for the entire time period – no part of the time period is left "unaccounted for." Therefore, section 558.031.4 does not authorize credit on Mr. Yowell's 2011 Phelps County convictions for the time he served in custody between February 6, 2012, and September 6, 2013.

We recognize that the circuit court *later* ordered that Mr. Yowell's sentences for the 2011 Phelps County convictions should run *concurrently* to his sentence for the 2007 Phelps County conviction. But the sentences for the 2011 convictions were not ordered to run concurrently to the sentence for the 2007 conviction until July 17, 2014, when Mr. Yowell was resentenced. Between February 6, 2012, and September 6, 2013, the sentences for the 2011 convictions had been ordered to run *consecutively*, and they accordingly had not yet begun to run.

The fact that Mr. Yowell is not entitled to credit against his 2011 convictions is made clear by our decision in *Pettis v. Missouri Department of Corrections*, 275 S.W.3d 313, (Mo. App. W.D. 2008). In *Pettis*, the offender was serving a life sentence without parole for his first-degree murder conviction when the offender committed the offense of possession of a controlled substance within a correctional institution. *Id.* at 316. The offender pled guilty to the drug offense and was sentenced to a *consecutive* four year term of imprisonment. *Id.* As in this case, the

10

*consecutive* drug sentence was later vacated and a *concurrent* sentence was imposed. *Id.* Although the offender argued that under section 558.031.4 his new *concurrent* sentence should be treated as if it had been imposed at the time of the original sentence, the court held that he was not entitled to the credit on his newly imposed concurrent sentence, for the time served *before* the sentence was ordered to run concurrently, because – prior to the offender's resentencing – his drug-possession sentence had been ordered to run consecutively to his murder sentence, and accordingly his drug-possession sentence had not yet begun to run. *Id.*

*Pettis* also relied on a 1995 amendment to section 558.031.4 which confirmed that, under the amended statute, an offender could not receive credit *as if* a new sentence had been imposed at the time of the offender's original sentencing. The provision that is currently subsection four was amended in 1995. The prior version provided that:

> If a sentence of imprisonment is vacated and a new sentence is imposed on the defendant for the same offense, *the new sentence is calculated as if it had commenced at the time the vacated sentence was imposed,* and all time served under the vacated sentence shall be credited against the new sentence.

§558.031.3 RSMo 1994 (emphasis added). Under this former provision, the concurrency of Mr. Pettis's corrected sentence would be calculated as if it had commenced at the time his vacated consecutive sentence was imposed – in April of 2004 – consequently requiring Mr. Pettis to receive credit during the time of his appeal. However, this middle clause was stricken when the provision was amended. We must read an amendment as purposeful: "[w]e are not to conclude that the legislature's deleting significant terms from its statutes is meaningless." *Pettis,* 275

S.W.3d at 319 (other citation omitted). Mr. Yowell essentially makes the same argument as the offender in *Pettis*: that his *new* sentences on his 2011 convictions, which provided that those sentences should run concurrently to the sentence on his 2007 conviction, should be treated as if the new sentences had been imposed at the time of Mr. Yowell's original sentencing. While this may have been a meritorious argument under the pre-1995 version of section 558.031.4, we must reject it under the current version of the statute.

Mr. Yowell contends that he is entitled to credit on his 2011 convictions under *Burlew v. Missouri Department of Corrections,* 340 S.W.3d 259 (Mo. App. W.D. 2011). *Burlew*, however, involves a fundamentally different situation than this case. In *Burlew*, the offender was given a four year felony sentence for driving while intoxicated, four years imprisonment for the first order of protection violation to run consecutively to the driving while intoxicated sentence, and four years for a second order of protection violation to run concurrently with the other two sentences. *Id*. at 260. After post-conviction relief was sought the circuit court vacated the felony driving while intoxicated charge and sentenced the offender to six months' imprisonment for misdemeanor driving while intoxicated. *Id.* The offender received credit towards the misdemeanor driving while intoxicated sentence for time served on the vacated felony driving while intoxicated sentence. *Id.* The Department, however, refused to credit him for any time served on his consecutive order of protection sentence, leaving 532 days uncredited to either of his consecutive sentences. *Id.*

12

In *Burlew*, we held that the Department's argument that the offender could not receive credit on his consecutive order of protection sentence until the felony driving while intoxicated conviction was vacated was incorrect and inconsistent with precedent. *Id.* at 262. We held that subsection 558.031.4 was inapplicable because it only applies to a "new sentence imposed upon the offender" in lieu of a vacated sentence and *Burlew* centers on the "effect of a vacated sentence on the running of a sentence *for a separate offense.*" *Id.* at 264. We explained that, "where one conviction and sentence in a consecutive sequence is later vacated, the other sentences in the sequence should be recalculated to run as if the vacated sentence had never existed." *Id.* at 263; *see Calvin v. Mo. Dep't of Corrections*, 277 S.W.3d 282 (Mo. App. W.D. 2009). In *Burlew,* when the felony sentence was vacated the remaining sentences shifted accordingly; meaning instead of calculating the start of the protection order sentence on the date of vacation, the consecutive sentence began on the date the misdemeanor sentence was complete. "[Burlew's] order of protection sentence would begin running on the day [he] completed serving the misdemeanor DWI sentence (which the petition alleges was on May 7, 2007), and not on October 20, 2008, when the circuit court actually vacated the felony DWI." *Id.* at 263.

In *Burlew*, the Department of Corrections' position left the offender with 532 days, in which he was incarcerated, which was applied to *none* of his sentences. We held that the offender's other sentences must "drop down," and commence when his new misdemeanor DWI sentence ended, in order to avoid having a period of incarceration which applied to *none* of the offender's sentences. That issue does not exist here: Mr. Yowell has been given credit for the time period from February 6,

13

2012, and September 6, 2013, on his new sentence for the 2007 Phelps County conviction. Unlike in *Burlew*, there is no period of time that the Department is refusing to grant credit to *any* sentence; all periods of time are "accounted for" in some way.

Mr. Yowell's request for credit on his 2011 Phelps County convictions is also inconsistent with the principle that "[a] Missouri criminal sentence cannot be made concurrent with another sentence retroactively; to do so would be equivalent to having the sentence commence before it was even imposed." *Kline v. State*, 437 S.W.3d 290, 294 (Mo. App. W.D. 2014); *see State ex rel. Lightfoot v. Schriro*, 927 S.W.2d 467 (Mo. App. W.D. 1996). Thus, it would be a misapplication of law for this court to treat the time period of February 6, 2012, to September 6, 2013, as if Mr. Yowell's sentences were concurrent because this time period occurs before Mr. Yowell received his concurrent sentences on July 17, 2014.

Therefore, because we treat vacated sentences as if they never existed and cannot retroactively create a concurrent sentence, out of the three cases in question, Mr. Yowell could only be serving time on his five year 2007 Phelps sentence; not the vacated seven year 2007 Phelps County sentence or the 2011 Phelps County sentences. Point two is granted.

## Conclusion

This Court finds the probation violation of special condition #11 to be related to the 2011(2) Phelps County DWI charge but not the 2007 and 2011(1) Phelps County DWI charges. Therefore, we find Mr. Yowell entitled to jail-time credit for the Phelps County 2011(2) sentence from January 4, 2012, to February 5, 2012, but

14

not the 2007 and 2011(1) Phelps County sentences.  We also find that vacating the original Phelps County sentences requires them to be treated as if they never existed, yet concurrent sentences cannot be enacted retroactively.  Thus, we find Mr. Yowell entitled to jail-time credit for the time periods of February 6, 2012, to September 6, 2013, on the 2007 Phelps County sentence but not the 2011 Phelps County sentences.  We affirm the trial court's judgment in part and reverse in part.

/s/ THOMAS H. NEWTON
Thomas H. Newton, Judge

Welsh, P.J., and Ahuja, C.J. concur.