**Jeffrey K. ELNICKI, Appellant,**

v.

**Michelle D. CARACCI, Respondent.**

**No. ED 89669.**

Missouri Court of Appeals,
Eastern District,
Division Two.

June 3, 2008.

James J. Leightner, Diekman & Leightner, St. Louis, MO, for Appellant.

Stefan J. Glynias, Matthew S. McBride, Lashly & Baer, P.C., St. Louis, MO, for Respondent.

Before LAWRENCE E. MOONEY, P.J., BOOKER T. SHAW, J., and KURT S. ODENWALD, J.

KURT S. ODENWALD, Judge.

## Introduction

Jeffrey K. Elnicki (Father) appeals from the trial court's judgment modifying a decree of dissolution of marriage (Judgment), *inter alia,* awarding Michelle D. Caracci (Mother) temporary child support and medical expenses for the parties' minor child not covered by Mother's insurance policy, half of the post-secondary expenses for the minor child, the dependency exemption for the child, and attorney's fees and costs. We reverse and remand to the trial court for a hearing on the motion for change of judge filed by Father prior to the hearing on the modification request.

## Background

On October 19, 1990, the trial court entered a decree of dissolution of marriage between Father, an attorney, and Mother, a paralegal.[1] On September 17, 1992, the parties tendered an Amended Settlement and Separation Agreement, which became part of their decree of dissolution, granting Mother with the care, custody and control of the minor child, A.C. Additionally, Father agreed to pay $600 per month in child support, representing 74 percent of A.C.'s average monthly expenses. Father agreed

1. Some discrepancy exists in the file as to when the Decree of Dissolution of Marriage was entered. The September 17, 1992 decree references a decree of dissolution entered on October 19, 1991, but the Amended Settlement and Separation Agreement filed on September 17, 1992 references a decree entered on October 19, 1990. The trial court's Judgment and Decree filed on February 9, 2007, included in its Findings of Fact that the trial court entered a decree dissolving the marriage of the parties on October 19, 1991.

to pay 74 percent of all expenses not paid through insurance or health plan coverage provided by his employer, and Father received the dependency exemption for A.C. for tax purposes.

On November 20, 1996, the parties executed another agreement and the court entered a Judgment Modifying Decree of Dissolution. Father agreed to pay $800 per month as child support for A.C. from November 20, 1996 through September 1, 1997, and $736 per month thereafter. Father would cover A.C.'s health insurance through his employer and pay 100 percent of all uncovered medical, dental, and psychiatric care expenses, including co-pays.

On August 9, 2000, the parties executed another agreement and the trial court entered a judgment incorporating its terms. The court deemed Father's obligation for child support current through July 31, 2000, and abated his child support for two months, after which time Father would again pay $736 per month in child support. Father and Mother would claim the dependency exemption in alternate years. Additionally, the parties established a procedure regarding submission of medical expenses to Father for Mother's reimbursement.

On June 30, 2005, Mother filed a motion to modify the court's previous orders (Motion to Modify), asking the court to increase child support; require both parties to obtain health insurance coverage for the minor child and incorporate the amounts paid into Form 14, still requiring Father to pay 100 percent of all non-covered medical, dental and psychiatric expenses; award the dependency exemption for all years to Mother; require a new Qualified Medical Child Support Order for Father's present and future employers; and order Father to pay Mother's attorney fees and costs of the modification. The motion alleged a change of circumstances so substantial and continuing as to make the terms of the Judgment unreasonable. Among the changes, Mother contended that A.C. incurs increased costs now that she is older, and that Father's income has increased substantially since the date of the last modification.

## Motion for Change of Judge

Father filed an Application for Change of Judge on June 30, 2006. In his motion, Father alleged that the trial judge demonstrated "systematic and continuing hostility and prejudice" toward Father during conferences and settings on January 18, March 15, April 4, May 24, and June 20, 2006. Father alleged that the trial judge demonstrated his hostility and prejudice toward him by prohibiting Father from stating his positions and supporting facts on a Motion for Contempt and Motion to Modify, prohibiting Father from fully answering questions posed by the trial court, and making a statement from the bench on June 20, 2006, in "an extremely hostile tone," without having heard any evidence, that Father "dodged a bullet" by settling with Mother on the Motion for Contempt. Further, Father alleged that because of the trial judge's systematic and continuing prejudice, he could not have a fair trial on the Motion to Modify.

On July 19, 2006, before hearing the Motion to Modify, the trial court took up Father's Application for Change of Judge. Father argued that under Section 508.090,[2] the trial court's duty was to determine whether the motion met the statutory scheme, and if so, to then transfer the case. Father stated that the trial court could not decide whether it was prejudiced. He added the "straw that broke the camel's back" that caused him to file

2. All subsequent statutory citations are to RSMo 2000, unless otherwise indicated.

the Application for Change of Judge was the trial judge's statement that Father dodged a bullet.

Mother argued that the motion for change of judge should be denied because it was filed out of time under Missouri Supreme Court Rule 51.05.[3]

The trial court responded that it would proceed under Section 508.090. It then explained:

And the first process, with respect to case law, is to address this issue. The first step in this whole process is to determine if the motion that was filed by the petitioner in this case is procedurally accurate . . .

So we go to the second step . . . . to determine if the petition for application [for change] of judge is substantially adequate. . . . And by that, does the petition allege certain facts which warrant disqualification for cause pursuant to 508.090. . . . And if it is determined by the Court that the petition is substantially adequate, then there's two options before the Court. Number one is to grant a hearing, or to recuse himself, and therefore it goes to—the change of judge is granted.

If the Court determines, from reading the petitioner's application for change of judge is inadequate, then that's where the process ends. In other words, if it fails to state a cognizable reason for recusal the judge at that point denies the motion to disqualify and we proceed on the case.

The trial court found that Father's Application for Change of Judge was not substantially adequate because it did not allege certain facts that would warrant disqualification. The trial court concluded that Father's motion "hasn't met that second step in the process. In other words

it's not substantially adequate, that alleges certain fact[s] which would warrant the disqualification." In finding that Father's motion for change of judge failed to allege facts warranting disqualification, the trial court stated the prejudice forming the basis of the disqualification must arise from an extra-judicial source, and that it knew nothing of the case outside of what it learned from the previous court appearances, did not know the parties, and that all previous matters addressed were procedural issues and discovery issues.

**Motion to Modify**

The trial court heard Mother's Motion to Modify on July 19, August 22, and September 28, 2006. During trial, Mother discussed 34 exhibits, but offered none into evidence. Additionally, Father discussed 19 exhibits, but also offered none into evidence. The trial court entered its Judgment on February 9, 2007.

The trial court entered its Findings of Fact and Conclusions of Law and found that the evidence was "clear and convincing that there exists sufficient, substantial and continuing changes of circumstances to justify modification of the dissolution of marriage as previously modified." Therefore, the trial court entered its Judgment and Decree, modifying the prior dissolution decree and modification decree requiring the payment of increased child support from Father, payment of expenses for A.C.'s involvement in the People to People Ambassador Program, requiring proportionate payment of post-secondary education, granting the dependency exemption to Mother, and requiring Father to pay Mother's reasonable attorney's fees totaling $25,958.50, plus costs.

*Points on Appeal*

Father raises seven points on appeal. First and foremost, in Point VI, Father

alleges the trial court erred, abused its discretion and misapplied the law in denying Father's motion for change in judge because the court improperly determined that the motion was substantially inadequate and did not allege certain facts that would warrant disqualification. Specifically, Father's motion recited seven reasons for disqualification, alleging that the trial court systematically prohibited Father from stating his positions in support of his motion, systematically prohibited Father from answering questions at court appearances and hearings, made statements regarding the previous motion for contempt filed by Mother, and demonstrated escalating hostility and prejudice against Father throughout the proceedings.

Among Father's other points on appeal, he claims error in the trial court's award of child support, attorney's fees, and extraordinary expenses. Because we reverse and remand for a hearing on the motion for change of judge, the Judgment is a nullity and the six remaining points are moot.

*Discussion*

We begin our discussion with Father's Point VI, whether the trial court erred in denying Father's motion for a change of judge. Father's motion was the trial court's first order of business before the parties argued the motion to modify.

█ In reviewing the trial court's denial of a motion for change of judge, the appellate court presumes that a trial judge will not preside over a proceeding in which the judge cannot be impartial. *Williams v. Reed*, 6 S.W.3d 916, 920 (Mo.App. W.D. 1999). Appellate review of a decision on a motion to disqualify is limited to deciding whether the trial court's ruling on the claim of prejudice amounted to an abuse of discretion. *Berry v. Berry*, 654 S.W.2d 155, 159 (Mo.App. W.D.1983).

█ Mother argued during the hearing that Rule 51.05 should apply; however, Rule 51.05 governs peremptory disqualification of a judge in a civil matter. Under that rule, the only prerequisite for obtaining a change of judge is a timely application and service of a copy of the application and notice of hearing on the other party. *State ex rel. Wesolich v. Goeke*, 794 S.W.2d 692, 695 (Mo.App. E.D.1990). No reason need be alleged for the disqualification under Rule 51.05. No showing of cause is required. Upon presentation of a timely application for a change of judge, the judge shall sustain the application. Rule 51.05(e).

█ While Rule 51.05 is similar to Section 508.090 in providing for the disqualification of a judge, the statute requires an additional showing of cause for change of judge and creates a greater burden on the party seeking a change of judge than imposed by Rule 51.05. Section 508.090.

Father argued his motion for a change of judge *for cause*, thus the trial court properly proceeded under Section 508.090, which provides that a judge may be disqualified in a civil suit for any of the following causes:

"(1) That the judge is interested or prejudiced, or is related to either party, or has been of counsel in the cause;

(2) That the opposite party has an undue influence over the mind of the judge."

Section 508.090.1.

Additionally, the related Section 508.130 provides, in pertinent part:

[a]ny party, his agent or attorney, may present to the court, or judge thereof in vacation, a petition setting forth the cause of his application for disqualification of the judge . . . , and when he obtained his information and knowledge of the existence thereof; and he shall annex thereto an affidavit, made by him-

self, his agent or attorney, to the truth of the petition, and that affiant has just cause to believe that he cannot have a fair trial on account of the cause alleged.

■ Next, Section 508.140.1 provides that "[i]f reasonable notice has been given to the adverse party or his attorney of record, the court or judge, as the case may be, shall consider the application, and if it is sufficient, the judge *shall* be disqualified . . . ." (emphasis added). This Court in *Goeke* explained that a "sufficient" motion for change of judge under the statute meant that initially the judge must review the application for procedural adequacy, whether it meets the requirements of time, notice, and form. 794 S.W.2d at 696–97.

Father's motion set forth the cause of his Application for Change of Judge, specifically alleging that the trial court demonstrated "systematic and continuing hostility and prejudice" toward Father during the conferences and settings by prohibiting Father from stating his positions and supporting facts on a Motion for Contempt and Motion to Modify, prohibiting Father from fully answering questions posed by the trial court, and, without first hearing evidence, stating that Father "dodged a bullet" by settling with Mother on the Motion for Contempt. Further, Father's motion alleged that he obtained his information at the various conferences and settings on the dates he provided, and stated that the "straw that broke the camel's back" and caused him to file the motion was the June 20, 2006 statement made by the trial court that Father "dodged a bullet." Father verified his Application for Change of Judge by his own affidavit, and also averred that he could not have a fair trial because of the hostility and prejudice alleged. We therefore find that Father's Application for Change of Judge was procedurally correct.

■ Next, the trial court must determine whether the motion is "substantively

adequate," or, in other words, whether the motion on its face alleges facts that, if true, warrant disqualification for cause under Section 508.090.1. If an application satisfies the statutory requirements, it is "sufficient" on its face. *Goeke,* 794 S.W.2d at 697. If the application is legally "sufficient" procedurally and substantively, then the judge shall be disqualified in accordance with Section 508.140.1, unless the facts alleged in the application are disputed. *Id.* "If the facts in the application are to be controverted rather than accepted as true for purposes of the motion, *a hearing on the record must be held.*" *Id.* (emphasis added).

■ Here, the basis for Father's Application for Change of Judge was the trial court's alleged demonstration of "systematic and continuing hostility and prejudice" toward Father. The law is very jealous of the notion that a judge should be impartial. *State v. Lovelady,* 691 S.W.2d 364, 365 (Mo.App. W.D.1985). It is not every prejudice, however, that rises to a level that is legally sufficient to disqualify a judge from the duty of hearing a case. "If 'lack of bias' or 'impartiality' are defined to mean the total absence of preconceptions in the mind of a judge, 'then no one has ever had a fair trial and no one ever will. The human mind is no blank piece of paper.'" *Goeke,* 794 S.W.2d at 697 (quoting *In re J.P. Linahan, Inc.,* 138 F.2d 650, 651–52 (2nd Cir.1943)).

This Court explained in *Goeke* the meaning of prejudice:

Prejudice is the attitude of personal enmity toward the *party* or in favor of the adverse party to the other's detriment. It is not the mere possession of views regarding the law or the conduct of a party or of his counsel. Prejudice is in the personal sense rather than in the judicial sense. Prejudice refers to a mental attitude or a disposition of the

judge towards a party: either a hostile feeling or spirit of ill-will against one of the litigants, or a favoritism towards one of them. Bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case. An impersonal prejudice resulting from background experience is insufficient.

*Goeke*, 794 S.W.2d at 697 (internal citations omitted).

In this case, the motion for change of judge was procedurally adequate and on its face alleged facts that were indicative of a prejudice, or a possible prejudice, on the part of the judge against Father. The trial court's comments, *without first having heard any evidence on the motion*, that Father had "dodged a bullet" by settling with Mother on the Motion for Contempt, were sufficient to question the origin of the judge's opinion. Such opinion was extra-judicial because the opinion did not originate in evidence on the motion. A reasonable person could have perceived the judge's statements as indicative of a bias or prejudice against one of the parties, or even alignment with the other party. The facts alleged in Father's motion, if true, suggest the presence of an "attitude of personal enmity toward a party" that we cautioned against in *Goeke*. At the very least, under the statute, Father was entitled to a hearing on the record on his motion for change of judge.[4] Therein, the controverted assertions made by Father in his Application for Change of Judge could be examined closely. If the challenged judge is to testify, the hearing must be held before another judge. *Goeke*, 794

S.W.2d at 699. "These minimal procedures are necessary because, in the face of a proper application for a change of judge, the judge lacks jurisdiction to proceed in the action in which his impartiality is questioned." *Id.* In conclusion, we hold that the trial court abused its discretion and erred in denying Father's motion for change of judge without a hearing. Point VI is granted.

When the court wrongfully fails to grant a party a hearing on an application or motion for change of judge, the court is thereafter without jurisdiction and the subsequent entry of judgment modifying the dissolution decree is a nullity. *Id.*; *Hough v. Hough*, 819 S.W.2d 751, 753 (Mo. App. W.D.1991). Regardless of the outcome of the hearing on Father's Application for Change of Judge, Mother's Motion to Modify must be reset for a hearing because the trial court was without jurisdiction when it failed to provide Father with the necessary minimal procedures of a hearing on Father's Application for Change of Judge. *Id.* Thus, Father's additional six alleged errors are moot and need not be addressed.

### Conclusion

The trial court's judgment is reversed and remanded to the trial court with directions that the trial court order a hearing on the Father's Application for Change of Judge.

LAWRENCE E. MOONEY, C.J., and BOOKER T. SHAW, JJ., Concur.

---

4. We reject Mother's suggestion that the brief appearance before the trial court on Father's Application for Change of Judge immediately prior to the hearing on Mother's Motion to Modify satisfied the requirements of a hearing as described in *Goeke*. While the transcript reveals some discourse between counsel and the trial court, this exchange could hardly be considered a "hearing" on controverted facts contained in Father's motion.