Philip M. Hess, Judge *370 Introduction
This case arises from a dispute between the Honorable Chris Kunza-Mennemeyer, the Presiding Judge of the 45th Judicial Circuit (the "Presiding Judge") and Lincoln County (the "County") over the salary of the Juvenile Officer's attorney. The Presiding Judge appeals the trial court's judgment dismissing her writ of mandamus against the County, refusing her request for attorney fees, and denying her motion to disqualify the trial judge. We affirm in part and reverse in part.
Factual Background
The County and the Presiding Judge have a dysfunctional relationship. As sometimes seen in family law cases, dysfunctional relationships can lead to complicated and expensive litigation, with costs far outweighing the original amount in dispute.
The dysfunction between the parties, for the purposes of this appeal, began in December 2014, when the Presiding Judge proposed increasing the Juvenile Officer's attorney's salary from $25,000 to $41,000. Until that time, the County Prosecutor's Office had been representing the Juvenile Officer in most matters. The Presiding Judge believed the County Prosecutor's Office would not be able to sufficiently represent the Juvenile Officer due to an increased workload.[1] The Presiding Judge notified the County Prosecutor's Office that she would be budgeting the Juvenile Officer's attorney's salary under the Circuit Court's own budget, and she would be hiring counsel to represent the Juvenile Officer.
The County disagreed with the Presiding Judge's proposal to raise the Juvenile Officer's attorney's salary to $41,000, but it agreed to move the position within the "Juvenile Budget." On December 18, 2014, it proposed the County Prosecutor's Office continue to represent the Juvenile Officer for $25,000. However, on December 24, 2014, the Presiding Judge appointed a private attorney, Jesse Granneman, to represent the Juvenile Officer effective January 1, 2015, at a rate of $150.00 per hour.
On February 4, 2015, the County filed a petition for review of the Circuit Court's budget with the Judicial Finance Commission ("First JFC Case"), disputing, inter alia, the $16,440.00 increase in the Juvenile Officer's attorney's salary.[2] A settlement conference was held on March 9, 2015, during which the parties signed a settlement agreement (the "Settlement Agreement") which stated "the Prosecuting Attorney's Office shall continue to provide representation of the Juvenile Offices in *371 [the County] and [Pike County]." The Settlement Agreement further stated "all items not specifically addressed herein shall remain budgeted as previously approved by the County Commission on January 9, 2015."
On March 16, 2015, the Presiding Judge filed a "motion for hearing" with the JFC, arguing that the Settlement Agreement was not the same document she agreed to during the settlement conference. She asserted the Settlement Agreement was a retyped version she never signed, and her signature on the Settlement Agreement was from an earlier version she had signed. She asserted the retyped version included provisions she had stricken and did not reflect other changes she made with a blue pen.
On April 3, 2015, counsel for the JFC filed an affidavit attesting to the circumstances surrounding the typing and filing of the final version of the Settlement Agreement. The affidavit stated both parties' attorneys had indicated during negotiations that the final version of the Settlement Agreement was acceptable. That same day, the JFC denied the Presiding Judge's motion. No further action was taken in the First JFC Case. Also on that same day, the County Prosecutor began representing the Juvenile Officer instead of Mr. Granneman.[3]
On April 21, 2015, the Presiding Judge entered an "Order of Payment" that declared Mr. Granneman was entitled to $12,165.00 ($150 per hour for 81.1 hours) for services he performed for the Juvenile Officer from January 1, 2015 through April 3, 2015, and ordered the County to pay that amount. The Juvenile Officer personally delivered the Order of Payment to the County Clerk. The County ignored the Order.
On September 15, 2015, the Presiding Judge sent correspondence to the County's Commissioner and Treasurer requesting payment for Mr. Granneman. The County refused the Presiding Judge's request, replying via a letter from the County Counselor that Mr. Granneman's services were not contracted for by the County and not authorized in the budget. The County Counselor instead offered to negotiate a settlement of Mr. Granneman's fees at a lower amount.
On November 3, 2015, the Presiding Judge filed a writ of mandamus against the County requesting a preliminary writ be issued to sequester funds to pay Mr. Granneman $12,165.00 plus interest at a rate of nine percent. The trial court issued a preliminary writ of mandamus. On January 3, 2016, the County filed its answer, a motion to dismiss, and a "counter motion" to declare the Presiding Judge's Order of Payment void.
On January 29, 2016, the County filed a petition for review over the Circuit Court's 2016 budget ("Second JFC Case"), where it disputed a $35,000 budget line item for legal fees in the Circuit Court's budget. The Presiding Judge filed an answer, asserting the $35,000 was necessary to pay current and prospective attorney fees for representing the Presiding Judge in her ongoing litigation with the County.
On May 10, 2016, the trial court heard oral argument on the Presiding Judge's writ of mandamus. The trial court continued the case for an evidentiary hearing, but then emailed the parties a week later and informed them it would not need further argument or an evidentiary hearing.
*372 The trial court requested the parties submit proposed findings of fact and conclusions of law, and neither party objected.
In June 2016, the JFC issued its ruling in the Second JFC Case, determining that $8,475 in attorney fees already incurred for the Presiding Judge's representation were reasonably budgeted. It determined the remaining $26,525 budget request for legal fees was unreasonable, because the amount was for prospective attorney fees which had not yet been incurred.
On June 13, 2016, the trial court entered its judgment denying the writ of mandamus, finding the Presiding Judge had no authority to enter her Order of Payment because it was contrary to the Settlement Agreement. Despite denying the writ, the trial court determined that the County owed Mr. Granneman $6,319.43 for the legal services he provided to the Juvenile Officer. It also denied the Presiding Judge's request for attorney fees. After the amended judgment was issued, the County paid Mr. Granneman $6,319.43.
On July 1, 2016, the Presiding Judge filed a petition for review of the Second JFC Case with the Missouri Supreme Court. The Court later affirmed the Second JFC Case decision in Lincoln County v. Forty-Fifth Judicial Circuit , 528 S.W.3d 357 (Mo. banc 2017), but noted the issues raised in the writ of mandamus case were not before it.
On July 13, 2016, the Presiding Judge filed a motion for new trial and motion for change of judge in the writ of mandamus case. The writ court denied the motion for change of judge on July 21, 2016, but did not rule on her motion for new trial. Her motion for new trial was denied by operation of Rule 78.06.[4] In October 2016, the Presiding Judge filed her notice of appeal of the trial court's amended order and judgment denying her writ and request for attorney fees.
Standard of Review
When reviewing a trial court's dismissal of a writ of mandamus, our concern is whether the trial court reached the correct result. Wheat v. Missouri Bd. of Prob. and Parole , 932 S.W.2d 835, 838 (Mo. App. W.D. 1996). We will affirm the court's decision if the court exercised its discretion lawfully and no abuse is shown. Id. (citing Sampson Distrib. Co. v. Cherry, 346 Mo. 885, 143 S.W.2d 307, 309 (Mo. 1940) ). Accordingly, we will affirm the judgment of the trial court in a mandamus action "unless no substantial evidence exists to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." State ex rel. Lupo v. City of Wentzville, 886 S.W.2d 727, 730 (Mo. App. E.D. 1994).
Discussion
The Presiding Judge argues six points of error on appeal, in which she challenges the trial court's judgment dismissing her writ of mandamus, refusing her request for attorney fees, and denying her motion for change of judge.
I. Points I-IV: Payment for Mr. Granneman's Services
The Presiding Judge's Points I-IV, taken together, argue she had the authority to order the County to pay Mr. Granneman for his work as the Juvenile Officer's attorney, and therefore the trial court *373 erred in dismissing the writ of mandamus. She argues the trial court erred in granting the County's motion to dismiss and "counter motion" to void the Order of Payment because it: 1) decided the case based on disputed facts without conducting an evidentiary hearing; 2) misapplied the standard of review because the Presiding Judge alleged sufficient facts establishing the County had a duty to pay Mr. Granneman; 3) erroneously determined the Presiding Judge did not have standing to issue the Order of Payment and to bring the petition for mandamus; and 4) misapplied the law in concluding the County was not required to pay Mr. Granneman because there was no contract between the County and Mr. Granneman.
Much of the argument contained in the Presiding Judge's first four points challenges the validity of the Settlement Agreement. Point II is dispositive of Points I-IV, and therefore we will review it first. In Point II, the Presiding Judge argues the trial court erred in dismissing her petition for mandamus because she alleged facts establishing a clear, unequivocal, and specific duty on the part of the County to pay Mr. Granneman from the 2015 budget. The Presiding Judge asserts there was sufficient money in the Circuit Court's budget to pay Mr. Granneman, and the County had no authority to refuse to pay Mr. Granneman because the County had already appropriated the money to the Circuit Court's budget. We agree.
The Presiding Judge cites to Circuit Court of Jackson County v. Jackson County , 776 S.W.2d 925 (Mo. App. W.D. 1989) to support two propositions: 1) upon receiving the Presiding Judge's Order of Payment, the County had a non-discretionary duty to pay Mr. Granneman regardless of whether it thought the expenditure might, in the future, cause the Circuit Court's budget to be exceeded; and 2) the Presiding Judge was permitted to draw from other budget line items in the Circuit Court's budget to pay Mr. Granneman aside from the "Attorney Salary" budget line item.
In Jackson , the circuit court filed a petition for writ of mandamus compelling the county and its officials to pay salary increases for certain court employees, even though the county had placed a freeze on all county employees' salary increases that year. Id. at 926. The circuit court requested the county pay the salary increases out of the amount appropriated to the circuit court for regular salaries, and the county denied the request.
The county argued that its budget process included a line item for regular salaries and a line item for salary increases. Id. It contended that because the circuit court failed to request money for the salary increase line item during the budget process, there was no money appropriated in the budget to pay for the increases, and therefore it was not required to pay the increases. Id. at 927. The circuit court argued it had the sole power to fix the compensation for its employees and was entitled to pay each of its employees the sum it deemed necessary, as long as it was within the amount appropriated by the county for salaries. Id. The circuit court contended that this was true even if there was no appropriation for the line item labeled salary increase. Id. The circuit court argued that because there was sufficient money in the line item appropriated for regular salaries to cover the salary increases, the county was required to pay it. Id.
On appeal, the Western District held the circuit court employees were not employees of the county, so even though the county had imposed a salary freeze on its employees, the freeze did not apply to court employees. Id. The Court held that *374 once funds are appropriated to the circuit court, "the county loses control over those funds." Id. The amount appropriated to the circuit court for regular salaries was available to the circuit court to pay its employees' salaries, and it did not matter whether the amount paid represented a salary raise or not. Id. The Court further held that:
Under its authority to fix the compensation of its employees, the Circuit Court has authority to determine which employees will be promoted, reclassified or receive salary increases. The only limitation on the power of the Circuit Court to compensate its employees as it deems best is the amount appropriated by the County. This is true whether or not the Court requests an appropriation for the line item labeled salary increases. Here, there is no dispute that the increases in salary granted by the Circuit Court will not cause it to expend more than the amount appropriated for regular salaries. Id. at 927-28.
The Court held that the county was required to pay the circuit court's requested salary increases. It noted that any holding to the contrary would "place the number and compensation of Circuit Court employees under the control of the County and the legislative department would determine the extent to which the judicial department could perform its judicial functions." Id.
The Presiding Judge argues that, both when she entered her Order of Payment and when she filed her writ of mandamus, there was sufficient money in the Circuit Court's budget to pay Mr. Granneman's fees. She argues that even after paying the Prosecutor's Office for the remainder of the year, there still would have been $6,249.40 left in the Attorney Salary line item in the budget,[5] and $11,057.00 remaining in the "Maintenance of Efforts" line item to pay Mr. Granneman. The Maintenance of Efforts line, the Presiding Judge asserts, could be used to pay for Mr. Granneman's fees, and the Presiding Judge submitted an affidavit from the Juvenile Officer supporting her assertion.[6] By combining the two line items, the Presiding Judge argues there was at least $17,306.40 in the budget to pay Mr. Granneman's $12,165.00 bill even after paying the County Prosecutor's Office for the remainder of 2015.
The County argues that the Presiding Judge is barred by collateral estoppel and res judicata from attacking the validity and enforceability of the Settlement Agreement. For the purposes of this opinion, we are assuming that the Settlement Agreement was binding from April 3, 2015 (the date the JFC denied the Presiding Judge's Motion for a hearing in the First JFC Case) onward. The question is whether the Presiding Judge had the authority to appoint Mr. Granneman on December 24, 2014, and then demand payment for the services he performed until April 3, 2015.
*375 In its brief, the County does not dispute the Presiding Judge's calculations or the Presiding Judge's assertion that the Maintenance of Efforts budget line could be used to pay Mr. Granneman's fees.[7] Instead, the County argues the Presiding Judge had no authority to enter her Order of Payment because it was contrary to both the County's 2015 budget and the Settlement Agreement, and therefore the County had no duty to pay Mr. Granneman's fees.
We disagree with the County. While it may have been ill-advised for the Presiding Judge to appoint Mr. Granneman during the budget dispute, she had the authority to do so. See Section 211.351;[8] Smith v. Thirty-Seventh Jud. Cir. of Missouri , 847 S.W.2d 755, 757 (Mo. banc 1993) (holding "[t]he number, compensation, selection and control of juvenile court employees is within the inherent power of the court."). As demonstrated by the Juvenile Officer's uncontested affidavit, the Maintenance of Efforts line item contained $11,057.00 and was broad enough to cover Mr. Granneman's fees. Even after the Settlement Agreement set the Attorney Salary line item at $25,000, there was still sufficient money allocated to the Attorney Salary and the Maintenance of Efforts line items in the Circuit Court's budget to pay Mr. Granneman's fees. This was true both when the Presiding Judge made her Order of Payment and filed her writ of mandamus. Accordingly, the County had a non-discretionary duty to pay Mr. Granneman's fees, and the trial court erred in dismissing the Presiding Judge's writ of mandamus. As the Court held in Jackson , "once funds are appropriated to the Circuit Court, the County loses control over those funds." 776 S.W.2d at 927.
The Presiding Judge has requested that we remand the case to the trial court for an evidentiary hearing. However, our disposition here makes such a hearing unnecessary. We grant the Presiding Judge's writ of mandamus in part,[9] and order the County to pay Mr. Granneman $12,165 for his services, less the amount the County has already paid him. Accordingly, we need not determine the merits of Points I, III, and IV.
II. Attorney Fees
The Presiding Judge's Point V asserts the trial court erred in denying her request for attorney fees incurred in litigating the mandamus action. The Presiding Judge also filed a motion for attorney fees on appeal, which we will consider here. The cumulative amount of fees and costs claimed is $29,412.38.
The Presiding Judge argues that § 476.270 imposes a non-discretionary duty on the part of the County to pay her attorney fees associated with the enforcement of the Circuit Court's budget expenditures. The County disputes her interpretation of § 476.270, and instead argues the question for our review is whether the trial *376 court was arbitrary and capricious in its determination of whether the attorney fees were reasonable and authorized by law.
Section 476.270 reads: "All expenditures accruing in the circuit courts ... shall be paid out of the treasury of the county in which the court is held in the same manner as other demands." Both parties cite to In re 1984 Budget for Circuit Court of St. Louis County , 687 S.W.2d 896 (Mo. banc 1985) for their interpretation of § 476.270. In that case, the county and circuit court sought review of a JFC decision which required the county to pay attorney fees incurred by the circuit court and one of its judges in defense of two federal civil rights actions. Both civil rights actions arose from employment disputes with the juvenile court. The Missouri Supreme Court held that "expenditures" as used in § 476.270 are defined under judicial interpretation as:
1. Those the General Assembly has fixed by statute or absolutely reposed in the court's discretion.
2. Those the local government unit ..., which is required to provide the funds to meet such expenditures, may have authorized previously, with or without request.
3. Those reasonably necessary for the court to carry out its functions.
Id. at 899 (citing State ex rel. Judges for the Twenty-Second Judicial Circuit v. City of St. Louis, 494 S.W.2d 39, 41 (Mo. banc 1973) ) (emphasis added).
The Court noted that both civil rights actions arose out of the official administrative duties of the circuit court and challenged the circuit court's control over juvenile court employees. Id. at 889-900. Accordingly, the Court held the expenditures for attorney fees in defense of those actions were reasonably necessary for the circuit court to carry out its functions, and affirmed the JFC's decision that the county was required to pay the attorney fees. Id.
Here, like in In re 1984 Budget , we must determine whether the payment of the Presiding Judge's attorney fees falls within the third category of "expenditures" as used in § 476.270, and therefore whether the attorney fees incurred by bringing the writ of mandamus were reasonably necessary for the Circuit Court to carry out its functions.
The Presiding Judge filed the writ of mandamus because the County refused to pay Mr. Granneman for the services he performed for the Juvenile Officer. Before filing the writ of mandamus, the Presiding Judge issued an Order of Payment to the County, instructing the County to pay Mr. Granneman's fees. When the County ignored her Order, she sent correspondence to the County requesting payment, which the County refused. Due to the County's refusal to pay Mr. Granneman, the Presiding Judge was forced to file her writ of mandamus. The County does not dispute that oversight of the Juvenile Officer's attorney was within the function of the Circuit Court. See id. at 900 (noting that "[The Missouri Supreme Court] previously recognized the importance of control over juvenile court employees to the administration of justice."). Therefore, bringing the writ was necessary for the Presiding Judge and Circuit Court to carry out their functions, and the Presiding Judge's attorney fees associated with litigating the writ were reasonably necessary expenditures.
We grant the Presiding Judge's Point V and her motion for attorney fees on appeal. When fixing the amount of attorney fees to be awarded, courts are considered experts, and their expertise extends to the value of appellate services. Rosehill Gardens, Inc. v. Luttrell , 67 S.W.3d 641, 648 (Mo. App. W.D. 2002).
*377 After reviewing the affidavit accompanying the Presiding Judge's motion for attorney fees, we conclude the County must pay $20,732.38 in attorney fees and costs ($20,000.00 in attorney fees plus $732.38 in costs) to the 45th Judicial Circuit, as that amount constitutes a reasonably necessary "expenditure" as used in § 476.270.
III. Motion to Disqualify Trial Judge
In the Presiding Judge's sixth and final point, she argues the trial court erred in denying her motion to disqualify the trial judge without an evidentiary hearing. The Presiding Judge asserts the trial judge created a presumption of prejudice by entering a judgment on her writ of mandamus without receiving evidence. The County contends the facts alleged in the Presiding Judge's motion to disqualify were facially insufficient and did not warrant an evidentiary hearing, and that the motion itself was untimely.
Regarding the timeliness of the motion, we note that under Rule 51.05, which allows for a change of judge by right, "[t]he application [for change of judge] must be filed within 60 days from service of process or 30 days from the designation of the trial judge, whichever time is longer." The Presiding Judge's motion for change of judge was filed well outside of Rule 51.05's timeframe, and therefore was untimely to the extent it was filed pursuant to Rule 51.05.
However, the Presiding Judge also argued in her motion that the trial judge was disqualified under § 508.090. Under § 508.090.1, a judge may be disqualified from any civil suit if "the judge is interested or prejudiced" or if a "party has undue influence over the mind of the judge."
When a party files a motion to disqualify a judge pursuant to § 508.090, the court must review the application to determine whether the motion is procedurally adequate; i.e., does it meet the requirements of time, notice, and form. State ex rel. Wesolich v. Goeke , 794 S.W.2d 692, 696-97 (Mo. App. E.D. 1990). Next, the court must determine whether the petition is substantively adequate; i.e., does it allege, on its face, facts which warrant disqualification for cause under § 508.090.1. Id. at 697. If the application is procedurally and substantively adequate, then the judge must be disqualified unless the facts alleged in the application are disputed. Id. If the facts are disputed, a hearing on the record must be held. Id.
The parties here do not dispute that the motion to disqualify the judge met the procedural requirements of § 508.090. Instead, the parties dispute whether the motion alleged, on its face, substantively adequate grounds for disqualification.
The Presiding Judge argued in her motion to disqualify:
[the trial judge] pre-judged disputed factual issues in the [writ of mandamus], denied [the Presiding Judge's] right to be heard, created the appearance of partiality, that the opposite party has an undue influence over the mind of the judge or the judge was biased or prejudiced against [the Presiding Judge], and the Trail [sic] Judge failed to decide disputed matters only on the evidence presented.
The Presiding Judge argues that under Elnicki v. Caracci , 255 S.W.3d 44, 50 (Mo. App. E.D. 2008), when a trial judge renders a judgment upon contested issues of fact without receiving any evidence to support its judgment, he creates a "presumption of prejudice." The Presiding Judge asserts that because the trial judge did not hold an evidentiary hearing on disputed factual issues (the validity of the Settlement Agreement) before entering his judgement, we must presume that the trial judge was prejudiced against her.
*378 The Presiding Judge's argument is misplaced for two reasons. First, the trial judge did receive and consider evidence before entering his judgment, as the record contained exhibits and the certified record of the First JFC Proceeding. Second, and more importantly, the Presiding Judge misstates our holding in Elnicki . The only "presumption" we recognized in Elnicki was that, on appeal, we presume trial judges will not preside over a proceeding in which the judge cannot be impartial. Id. at 49.
In Elnicki , we held that in order for a trial judge's bias or prejudice to be disqualifying, it must stem from an extrajudicial source and result in the judge having an opinion on the merits of the case based on something outside of what the judge learned from her participation in the case. Id. at 50 (quoting State ex rel. Wesolich v. Goeke, 794 S.W.2d 692, 697 (Mo. App. E.D. 1990) ). Unlike in Elnicki, no such extrajudicial source of bias or prejudice was alleged here. The Presiding Judge's argument that we must presume the trial judge was biased simply because he ruled on her motion without first conducting an evidentiary hearing is not supported by any case cited by the Presiding Judge.
Accordingly, the Presiding Judge's motion to disqualify did not allege facts sufficient on its face to disqualify the trial judge for cause. Because the motion did not meet the substantive requirements of § 508.090, the trial court did not err in denying it without an evidentiary hearing.
Conclusion
We affirm the trial court's denial of the Presiding Judge's motion to disqualify. We grant the Presiding Judge's writ of mandamus in part and order the County to pay Mr. Granneman $12,165.00 for his services without interest, less the amount the County has already paid him. In addition, we grant the Presiding Judge's motion for attorney fees and costs in the total amount of $20,732.38 for litigating the writ and this appeal.
Lisa P. Page, P.J. and Roy L. Richter, J. concur.

In 2014, the Missouri Supreme Court issued operating rules which required that Juvenile Officers be represented by an attorney whenever the Juvenile Officer or her staff presented argument, reports, or other evidence to the Court. Sup. Ct. Op. Rule 29.01.

The State of Missouri has assigned the responsibility for financing the operation of circuit courts to the counties. In re 1983 Budget for Cir. Ct. of St. Louis County, Mo. , 665 S.W.2d 943, 944 (Mo. banc 1984). In order to safeguard the independence of the circuit courts, a county's governing body cannot revise the estimates of expenditures submitted by the circuit court "but shall appropriate ... the amounts estimated as originally submitted [by the circuit court]." Section 50.640.2 RSMo. The county may challenge the circuit court's budget by filing a petition with the Judicial Finance Commission, which is charged with mediating and, if necessary, adjudicating circuit court budget disputes. In re 1983 Budget, 665 S.W.2d at 944. An amount equal to the difference between the estimates of the circuit court and the amounts deemed appropriate by the county is placed in an escrow account, and is not appropriated and expended until a final determination is made by the Judicial Finance Commission. Section 50.640.2.

The County Prosecutor's Office represented the Juvenile Officer for the remainder of 2015, and has continued to do so since then, performing all of the responsibilities necessitated by Sup. Ct. Op. Rule 29.01.

All references to Rules are to the Missouri Supreme Court Rules (2017) unless otherwise indicated. Rule 78.06 states that "[a]ny motion for new trial, motion to amend the judgment or opinion, or motion for judgment notwithstanding the verdict is overruled for all purposes if the trial court does not rule on it within ninety days after the date the last such timely motion is filed."

We note that, as of September 30, 2015, there was $14,583.00 remaining in the budget balance for the Attorney Salary budget line. The Presiding Judge reached the $6,249.40 figure by subtracting four months' worth of attorney salary ($2,084.40 per month) that was being paid to the Prosecutor's Office from the $14,583.00 remaining in the budget. The Presiding Judge's calculations were supported by an affidavit from the Juvenile Officer.

The affidavit states, in relevant part, "$11,057.000 was available in the Juvenile Officer Maintenance of Efforts fund budgeted for the year 2015, as of August 31, 2015.... It would be appropriate to utilize the Juvenile Maintenance of Efforts for the purpose of paying the balance owed to Juvenile Office Attorney Jesse Granneman, as such use would not be outside the scope of said Fund."

We note that, during oral argument, counsel for the County asserted that the Maintenance of Efforts budget line was not a "slush fund to cover expenses that weren't budgeted." However, when asked who decided whether an expense was within the circuit court's budget line item, counsel for the County conceded that "the court gets to make that the decision."

All statutory references are to RSMo (2000) as amended, unless otherwise indicated.

Although the Presiding Judge, in her proposed preliminary writ of mandamus, requested interest on behalf of Mr. Granneman "at the rate of 9% from April 21, 2015 to the date of actual payment," neither party briefed the issue of interest on appeal. Therefore, the issue of whether the trial court erred in denying Mr. Granneman interest is not before us, and we do not order the County to pay interest.